# United States Court of Appeals
## For the First Circuit

No. 21-1301

CENTRO DE PERIODISMO INVESTIGATIVO, INC.,

Plaintiff, Appellee,

v.

FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]
[Hon. Bruce J. McGiverin, U.S. Magistrate Judge]

Before

Lynch, Thompson, and Kayatta,
Circuit Judges.

Martin J. Bienenstock, with whom Guy Brenner, Adam L. Deming, Mark D. Harris, Joseph S. Hartunian, Timothy W. Mungovan, John E. Roberts, Laura E. Stafford, and Proskauer Rose LLP were on brief, for appellant.

Judith Berkan, with whom Berkan/Méndez, Steven J. Lausell-Recurt, Legal Clinic Interamerican University School of Law were on brief, for appellee.

Juan Cartagena, Jose Perez, Lía Fiol-Matta, Rachel B. Sherman, Tara J. Norris, and Patterson Belknap Webb & Tyler LLP on brief for LatinoJustice PRLDEF, amicus curiae.

Brendan Benedict and Benedict Law Group PLLC on brief for

Espacios Abiertos, the National Freedom of Information Coalition, the Iowa Freedom of Information Council, and the Nevada Open Government Coalition, amici curiae.

Ariadna Michelle Godreau Aubert and Ayuda Legal Puerto Rico on brief for Asociación de Periodistas de Puerto Rico, amicus curiae.

Tomás A. Román-Santos, Román Santos LLC, Bruce D. Brown, Katie Townsend, Sarah Matthews, Adam Marshall, and Madeline Lamo on brief for the Reporters Committee for Freedom of the Press and twenty-seven other Media Organizations, amici curiae.

May 17, 2022

**THOMPSON**, **Circuit Judge**. The Centro de Periodismo Investigativo ("CPI"), a non-profit media organization based in Puerto Rico, is on a quest to obtain documents from the Financial Oversight and Management Board for Puerto Rico ("the Board") that the Board has not simply handed over upon request. The Board is resisting CPI's reliance on Puerto Ricans' general constitutional right to access public documents as the basis for why CPI is entitled to the documents it seeks. After CPI turned to the district court for assistance, the Board asked the district court to dismiss the litigation, arguing that it is immune from suit pursuant to both the Eleventh Amendment of the United States Constitution and the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. § 2101 et seq., and that PROMESA preempts the disclosure obligations within Puerto Rico Constitution Article II, section 4 ("P.R. Const. § 4"), the provision upon which CPI relies. The district court disagreed with the Board, allowing CPI's quest to proceed. The Board is before us now on interlocutory review of these weighty issues, asking us to reverse the district court. After careful consideration of the parties' arguments, we affirm with respect to constitutional immunity and decline to exercise pendent appellate jurisdiction over the remaining issues.

- 3 -

## HOW WE GOT HERE

Before we delve into the travel of this case through the district court and start exploring the issues presented in this appeal, we lay out a brief description of PROMESA, the Board, and CPI. Congress, pursuant to its Territorial Clause power,[1] passed PROMESA in 2016 to address Puerto Rico's "fiscal emergency" by creating "mechanisms for restructuring [its] debts . . . and for overseeing reforms of [its] fiscal and economic policies." In re Fin. Oversight and Mgmt. Bd. for P.R., 916 F.3d 98, 103-04 (1st Cir. 2019). Congress created the Board in PROMESA "as an entity within the territorial government" of Puerto Rico to help the Commonwealth "achieve fiscal responsibility and access to the capital markets." 48 U.S.C. § 2121(a), (c)(1); see In re Fin. Oversight and Mgmt. Bd. for P.R., 872 F.3d 57, 59 (1st Cir. 2017); Peaje Invs. LLC v. García-Padilla, 845 F.3d 505, 515 (1st Cir. 2017). PROMESA gave the Board the authority to, inter alia, "develop, approve, and certify Fiscal Plans and Territory Budgets, . . . §§ 2141-2142, negotiate with the Commonwealth's creditors, . . . § 2146, and, under Title III, to commence a bankruptcy-type proceeding on behalf of the Commonwealth, . . . § 2175." In re

---

[1] The U.S. Constitution's Territorial Clause provides Congress with the "power to dispose of and make all needful Rules and Regulations respecting the Territory . . . belonging to the United States," U.S. Const. art. IV, § 3, cl. 2, and Congress explicitly exercised this power when it enacted PROMESA, 48 U.S.C. § 2121(b)(2).

<u>Fin. Oversight and Mgmt. Bd. for P.R.</u>, 916 F.3d at 103-04. The Board has seven members, appointed by the President and supported by an executive director and staff (the precise number of whom were not set by the statute). 48 U.S.C. § 2121(e). The sections of PROMESA at the center of this appeal are:

> (1) PROMESA § 103: "The provisions of [PROMESA] shall prevail over any general or specific provisions of territory law, State law, or regulation that is inconsistent with [PROMESA]." <u>Id.</u> § 2103.
>
> (2) PROMESA § 105: "The Oversight Board, its members, and its employees shall not be liable for any obligation of or claim against the Oversight Board or its members or employees or the territorial government resulting from actions taken to carry out this chapter." <u>Id.</u> § 2125.
>
> (3) PROMESA § 106: "[A]ny action against the Oversight Board, and any action otherwise arising out of [PROMESA], in whole or in part, shall be brought in a United States district court for [Puerto Rico]." <u>Id.</u> § 2126.

CPI uses investigative journalism to access and distribute information about Puerto Rico to Puerto Ricans so they may be better informed about issues affecting them and may be better prepared to exercise their democratic rights. CPI initiated this litigation against the Board in June 2017, relying on PROMESA § 106 for jurisdiction and asking the district court to issue a declaratory judgment, injunctive relief, and writ of mandamus[2] forcing the Board to release documents about Puerto Rico's fiscal

---

[2] CPI did not request an award of damages.

situation, communications among Board members, contracts, meeting minutes, and financial disclosure forms for the Board's members ("the 2017 Complaint").[3]  CPI had requested these documents directly from the Board to no avail.  CPI alleged that the Board, by ignoring the requests or providing less than complete responses to CPI's requests, was violating P.R. Const. § 4.[4]

The Board filed a motion to dismiss for lack of subject-matter jurisdiction and for failure to state a claim, arguing that

_____

[3]  Specifically, CPI sought the Board's reports pertaining to: "cash flow," "compliance" with "approved budget by budgetary fund and by agency," the Commonwealth's Treasury Department's "revenues and a narrative about collective efforts," payroll, "federal funds received and disbursed by area and by agency," "debt obligations," and "agency[] productivity and performance with appropriate metrics."  CPI also sought "bank account data and statements," "[q]uarterly report[s] on each agency's productivity and performance," financial statements and conflict of interest submissions by the Board members prior to their designations to the Board, communication records between the Board and the federal government, contracts between the Board and "private entities," Board work product such as "protocols, regulations, manuals or memorandums," and meeting minutes.

[4]  Article II, section 4 of Puerto Rico's Constitution provides, in relevant part, that "[n]o law shall be made abridging the freedom of speech or of the press, or the right of the people peaceably to assemble and to petition the government for a redress of grievances."  The Puerto Rico Supreme Court recognizes this provision to include the public's right to access public information as "firmly related to the exercise of the rights" provided within this section. Bhatia Gautier v. Rossello Nevares, 199 P.R. Dec. 59 (P.R. 2017) (certified translation at 17) (citing Trans Ad. de P.R. v. Junta de Subastas, 174 P.R. Dec. 56 (P.R. 2008); Ortiz v. Dir. Adm. de los Tribunales, 152 P.R. Dec. 161 (P.R. 2000); and Soto v. Srio. De Justicia, 112 P.R. Dec. 477 (P.R. 1982)).

- 6 -

the Eleventh Amendment to the United States Constitution[5] bars CPI's quest to force the Board to comply with P.R. Const. § 4, and that PROMESA preempts the disclosure obligations within P.R. Const. § 4.[6] CPI opposed the motion, arguing that the Eleventh Amendment did not bar its suit, that PROMESA did not, in any way, preempt P.R. Const. § 4, and that PROMESA § 106 expressly provided that the federal district court is the only forum in which actions can be brought against the Board for matters arising out of PROMESA.

The district court judge denied the motion, assuming without deciding that the Board is an arm of the Commonwealth entitled to Eleventh Amendment immunity, concluding Congress (in

---

[5] Much more on the Eleventh Amendment is coming. For now it's enough to know that this Amendment may provide legal immunity to States -- and under some conditions, to State entities -- from lawsuits in federal court when the court is asked to enforce a state law against the sovereign State or state entity. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-102, 117 (1984); Grajales v. P.R. Ports Auth., 831 F.3d 11, 15 (1st Cir. 2016); Espinal-Dominguez v. Puerto Rico, 352 F.3d 490, 493-94 (1st Cir. 2003) ("This provision has been authoritatively interpreted to safeguard States from suits brought in federal court by their own citizens as well as by citizens of other States.").

[6] This case was briefly stayed pursuant to an automatic stay provision within PROMESA, 48 U.S.C. § 2161 (incorporating the Bankruptcy Code's automatic stay provisions -- 11 U.S.C. §§ 362, 922), after the district court denied the Board's request to reassign the case to the Title III docket but granted the Board's request to apply an automatic stay. In August 2017, the bankruptcy court granted CPI's motion to lift the automatic stay, and the litigation resumed in district court. None of the procedural aspects of the stay or lift-stay proceedings are at issue in this case.

PROMESA) waived or abrogated the Eleventh Amendment immunity, and also concluding that PROMESA did not preempt P.R. Const. § 4. We'll get into the judge's reasoning in a little bit -- for now we stay focused on summarizing the travel of the case through the district court before the case landed on our bench. After the denial of the Board's motion to dismiss, the district judge referred the case to a magistrate judge to set "case management deadlines for the production of the requested documents" and to preside over the discovery stage of the litigation.

The magistrate judge held a status conference and the parties thereafter filed a series of informative motions to keep the court apprised of the progress they were making towards the Board producing -- and CPI receiving -- the documents CPI requested. Over the following months, there was some progress. The Board produced some documents and continued to withhold some (the details of which are not relevant to the arguments and issues on appeal before us). CPI, however, became frustrated with the pace of the production process, and in October 2018 it started filing motions asking the court for help to speed up production. These motions included one requesting the court set a status conference date to address the Board's purported delays in producing the requested documents and another motion a few months later requesting the court compel the Board to produce the requested documents or assert a reason for withholding each

document withheld as well as to impose a monetary sanction based on the Board's alleged contempt for its failure to produce the requested documents. The Board made assurances that the documents CPI wanted were to be delivered soon, so the court denied CPI's motions but ordered a status update and promised to schedule a status conference to resolve whatever production issues remained at that time.

The magistrate judge held this next status conference in March 2019; the parties identified categories of documents the Board was withholding, and the magistrate judge ordered the Board and CPI to work through the specific areas of dispute. The magistrate judge noted the parties had agreed that the documents to be produced were all created before a cut-off date of April 30, 2018 (the reason why this date is relevant will become clear in the next paragraph). The magistrate judge also ordered that the parties notify him two weeks later about the categories of documents still in dispute and each party's reasons why these categories should or should not be produced. The parties complied, and the magistrate judge issued a report and recommendation ("R&R") recommending the court (1) deny CPI's request for several draft reports and documents the Board had withheld under a claim of law enforcement privilege and (2) order the Board to produce a "comprehensive, legally-sufficient" privilege log identifying why it was invoking several other categories of privilege for the

- 9 -

remaining documents it was withholding.  Over the parties' objections, the district judge adopted the R&R in its entirety in a short order entered directly onto the docket (known in some courts as a "text order"), concluding the magistrate judge's recommendations were "well-grounded in both fact and law," and setting a deadline for the Board to produce the privilege log.[7]

After the magistrate judge issued the R&R and the parties filed their respective objections but before the district judge entered the order adopting the R&R, CPI started a second case in district court against the Board, seeking the production of documents related to communications between the Board and the federal government as well as between the Board and the Puerto Rico government created on April 30, 2018 and after ("the 2019 Complaint").[8]  The Board filed a motion to dismiss the 2019

---

[7]     The magistrate judge also issued a separate R&R recommending the denial of CPI's motion to compel the disclosure of the Board's members' financial statements dating before each member's appointment to the Board.  The district court adopted the R&R in its entirety (over the Board's limited objection based on its contention that the magistrate judge misread PROMESA § 105).  Neither party challenges this order in this appeal.

[8]     The 2019 Complaint echoed the 2017 Complaint, seeking an injunction and writ of mandamus ordering the Board to deliver

> records related to communications, inquiries or requests for information, documents, reports or data issued by any member of the Board and/or its staff to any federal [or Puerto Rico] government agency or federal [or Puerto Rico] government official, or by the federal [or Puerto Rico] government, its agencies or staff, to the Board, from April 30, 2018 until the delivery date, including,

Complaint, restating its arguments from its first motion to dismiss (lack of subject matter jurisdiction and failure to state a claim) and adding a third reason CPI could not prevail in its quest for the Board's documents: PROMESA § 105 provided the Board with immunity from the relief CPI seeks. The district court consolidated this second case with the first case and denied the Board's motion to dismiss in a short text order "for the reasons stated in the Court's Opinion and Order" entered in the lead case about the 2017 Complaint, briefly listing its main conclusions from the Opinion and Order.

The Board filed a notice of appeal to challenge both the order denying its motion to dismiss the 2019 Complaint and the order requiring it to compile and submit the detailed privilege log. This court granted the Board's motions to expedite the appeal as well as to stay the district court proceedings.

## OUR TAKE[9]

Out of the gate, CPI contends we should not hear the Board's appeal because it has waived any appellate rights through

---

but not limited to, email and text messages through any digital messaging system.

[9] We appreciate the thoughtful submissions from the amici (their names are listed near the case caption up top) but we give the reader a heads up that we cannot consider any "arguments advanced only 'by amici and not by parties.'" Mount Vernon Fire Ins. Co. v. VisionAid, Inc., 875 F.3d 716, 720 n.1 (1st Cir. 2017) (quoting In re Sony BMG Music Ent., 564 F.3d 1, 3 (1st Cir. 2009)).

- 11 -

conduct it engaged in before the district court during the 2017 suit, as we'll discuss momentarily. Not so, says the Board and urges us to conclude on the merits of its appeal that CPI cannot prevail in its quest for the documents it demands because constitutional and statutory immunity shield the Board from CPI's suit and because PROMESA preempts P.R. Const. § 4. Assuming we will reach the merits, CPI says it fully supports the district court's conclusions. We'll start with CPI's waiver contention before moving into the Board's arguments. For those who prefer to know the end result before reaching the end of the opinion, we conclude that: The Board properly availed itself of interlocutory review of the denial of its motion to dismiss only with respect to its Eleventh Amendment immunity argument and, in PROMESA § 106, Congress abrogated the Board's assumed Eleventh Amendment immunity. Read on for the details and the whys of these conclusions.

## Availability of Interlocutory Review

As CPI tells it, we need not address either of the Board's immunity contentions raised in response to the 2019 Complaint because the Board has waived any right to prosecute an appeal of those issues. That is so for a couple of reasons: CPI says the Board missed its opportunity to challenge the district court's conclusions that the Board is neither immune from CPI's suit nor saved by preemption when the Board did not immediately

- 12 -

appeal the denial of its motion to dismiss the 2017 Complaint. CPI also says the Board waived its appellate rights by producing documents in the first suit and by pretending it would ultimately comply with the agreed-upon documents production stipulations.

The Board replies that CPI is ignoring important facts: CPI filed not one but two separate complaints, and the Board's appeal here is from the district court's denial of its motion to dismiss the 2019 Complaint, not the 2017 Complaint. Continuing, CPI, says the Board, fails to explain why its participation in the first suit or why discovery orders from the first suit preclude it from appealing the district court's rejection of its second-suit jurisdictional challenges.

We first note that while CPI raises this waiver issue before us, arguing the Board's lack of diligence in timely pursuing its Eleventh-Amendment-subject-matter-jurisdiction assertions bars this appeal, CPI did not provide any on-point or helpful case law to help us understand why it believes that is so. For support, CPI only cites cases dealing with lack of diligence in other contexts, such as juror disqualification, evidentiary issues during trial, and qualified immunity. The same holds true for why the Board's participation in suit one's discovery practices prevents this appeal -- CPI gives us no helpful case law applicable to its waiver contention. Regardless, we understand CPI's essential argument to be that because the Board slept on its rights

in the first suit, it necessarily waived any immunity defense in the second.  So we assess CPI's contention.[10]

Case law tells us an Eleventh Amendment sovereign immunity defense, as asserted here, is jurisdictional and therefore may be raised at any point during litigation, even for the first time on appeal.  R.I. Dep't of Env't Mgmt. v. United States, 304 F.3d 31, 49 (1st Cir. 2002).  However, a defendant can waive this immunity defense by participating in the litigation, thereby indicating its consent to suit.  Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 619, 622 (2002).  To constitute waiver, the sovereign's litigation conduct "must be unambiguous and must evince a clear choice to submit the state's rights for adjudication by the federal courts."  Ramos-Piñero v. Puerto Rico, 453 F.3d 48, 52 (1st Cir. 2006) (cleaned up) (internal citations omitted).

For example, we held a defendant did waive its sovereign immunity when it argued this defense before the district court, did not raise it in a first appeal, then tried to resurrect the issue in a second appeal in the same matter.  See Aquinnah/Gay Head Cmty. Ass'n, Inc. v. Wampanoag Tribe of Gay Head (Aquinnah), 989 F.3d 72, 83 (1st Cir. 2021).  Another example of waiver by

---

[10]  Rather than deem CPI's contentions waived for failure of development, we address them because CPI indeed provided some case law in an effort to support its points, perhaps cited so we could reason by analogy to the situations presented in those cases.

- 14 -

litigation conduct: When a state entity engaged in litigation by filing a counterclaim and a third-party complaint before asserting sovereign immunity. Davidson v. Howe, 749 F.3d 21, 28 (1st Cir. 2014). Or, the slam dunk for waiver identified by the Supreme Court was when a state defendant -- sued in state court under a statute in which the state had waived immunity from suit -- removed a case to federal court then filed a motion to dismiss on the basis of sovereign immunity. Lapides, 535 U.S. at 619, 622. We have said there is no waiver, though, when the sovereign defendant "does nothing more than zealously defend against the [court's jurisdiction] whenever possible." Consejo de Salud de la Comunidad de la Playa de Ponce, Inc. v. González-Feliciano, 695 F.3d 83, 105 (1st Cir. 2012).

Our dive into CPI's and the Board's back-and-forth during the 2017 case's discovery proceedings reveals the Board indicated in its filings that it was not conceding its immunity defenses. Soon after the district court judge denied the Board's motion to dismiss CPI's 2017 Complaint, the parties submitted a joint initial scheduling memorandum to the magistrate judge to kick off the discovery process. In a section called "Statement of Jurisdictional Issues" the Board asserted that the court lacks jurisdiction on both constitutional and statutory immunity grounds (as well as that P.R. Const. § 4 preempts CPI's claims). Later on, when the Board filed a limited objection to the R&R about the

privilege log, the Board included a statement that it was reserving its right to assert "its position that th[e] [c]ourt is without jurisdiction over this matter" and was not waiving any of its arguments about either sovereign or statutory immunity. With these rights-preservation filings in the record and our prior discussions of waiver by conduct in mind, we conclude that the Board did not waive its immunity arguments by engaging in the discovery process before CPI filed the 2019 Complaint.

That being said, because the district court explicitly incorporated its legal reasoning from the 2018 order denying dismissal of the 2017 Complaint into the order denying dismissal of the 2019 Complaint, our review of the later order will necessarily have to examine the fully articulated reasoning in the first order.

Therefore, we move on to consider whether CPI's other jurisdictional challenges have merit. CPI objects to the Board's assertion of interlocutory appellate jurisdiction pursuant to the collateral order doctrine, arguing that the Board's challenge to the denial of Eleventh Amendment immunity can wait until the district court enters a final judgment. The same holds for the district court's order for production of documents.

In general, this court only allows appeals from final judgments. 28 U.S.C. § 1291. As with any rule, however, there are exceptions, and the Board says two apply here. First, an

interlocutory appeal of the order denying dismissal of the 2019 Complaint is properly before this court pursuant to the collateral order doctrine. Second, an interlocutory appeal of the order directing the Board to create a privilege log is an immediately appealable injunction pursuant to § 1292(a).

The collateral order doctrine allows an order issued by a district court to be appealed immediately when the order "finally determines claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Asociación De Subscripción Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores Galarza, 484 F.3d 1, 13 (1st Cir. 2007) (alteration adopted) (quoting Espinal-Dominguez v. Puerto Rico, 352 F.3d 490, 495 (1st Cir. 2003)); Nieves-Márquez v. Puerto Rico, 353 F.3d 108, 122 n.11 (1st Cir. 2003). Stated differently, the collateral order doctrine applies when the trial court's decision is sufficiently final, urgent, important, and separable. Espinal-Dominguez, 352 F.3d at 496 (citing In re Rectical Foam Corp., 859 F.2d 1000, 1004 (1st Cir. 1988)). This court has previously held that a district court's denial of a state or state entity's claim that the Eleventh Amendment provides full immunity from suit meets the elements of the collateral order doctrine because: (1) the decision "conclusively determines that the State [or state entity]

- 17 -

can be subjected to the coercive processes of the federal courts" (finality), (2) "the principal benefit conferred by the Eleventh Amendment -- an immunity from suit -- will be 'lost as litigation proceeds past motion practice'" (urgency), (3) the decision "involves an important legal question (the existence and extent of a 'fundamental constitutional protection')" (importance), and (4) the "question has no bearing on the substantive merits of the case" (separability).  Id. at 496-97 (quoting P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 145 (1993)).

CPI says these elements aren't met because "[t]here would [be] no immediate harm to the Board if this case proceeds to final judgment" and that there could be "effective review" after the Board produces the requested documents or identifies the documents it thinks should be protected from disclosure.  But CPI does not attempt to distinguish our case law applying the collateral order doctrine to denials of Eleventh Amendment protection or show, beyond its broad argument, why the collateral order doctrine elements aren't met here.  In any event, we agree with the Board that the district court's order denying its claim of Eleventh Amendment immunity may be appealed now pursuant to the collateral order doctrine.  See P.R. Aqueduct & Sewer Auth., 506 U.S. at 141, 147 (holding States and state entities that are (or claim to be) "arms of the State" may appeal a district court decision denying Eleventh Amendment immunity pursuant to the

- 18 -

collateral order doctrine) (citing Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949)); cf. Espinal-Dominquez, 352 F.3d at 499 (dismissing an interlocutory appeal for want of appellate jurisdiction because the collateral order doctrine could not make one part of a case reviewable when the Commonwealth of Puerto Rico had also acknowledged that the other remedies the plaintiff sought in the same cause of action would not be shielded by Eleventh Amendment immunity).

The Board claims that its other arguments -- statutory immunity and preemption -- are also properly before us now because these are "inextricably intertwined with the Eleventh Amendment immunity issue," though it does not tell us how. We have indeed recognized that pendent appellate jurisdiction "exists" "when an issue is 'inextricably intertwined' with a denial of immunity, and [when] review of the pendent issue 'was necessary to ensure meaningful review' of immunity." Lopez v. Massachusetts, 588 F.3d 69, 81-82 (1st Cir. 2009) (quoting Swint v. Chambers Cnty. Comm'n, 514 U.S. 35, 51 (1995), and citing Suboh v. Dist. Attorney's Office, 298 F.3d 81, 97 (1st Cir. 2002), and Fletcher v. Town of Clinton, 196 F.3d 41, 55 (1st Cir. 1999)); see also Nieves-Márquez, 353 F.3d at 123. Such intertwinement is not present here, however. An examination of our prior exercises of pendent appellate jurisdiction reveals we have done so in situations where the statutory questions presented were central to answering the

- 19 -

sovereign immunity question. See, e.g., Lopez, 588 F.3d at 82 (exercising pendent appellate jurisdiction because whether the state agency involved was an "employer" within the meaning of Title VII "was both determinative and factually and legally entwined with the Eleventh Amendment question") (citing Nieves-Márquez, 353 F.3d at 123-24); see also Nieves-Márquez, 353 F.3d at 123 (stating the answer to whether any of the causes of action pled allowed for damages as opposed to equitable remedies only was "inextricably intertwined with the issue of Eleventh Amendment immunity"). In contrast here, we can (and do) resolve the Eleventh Amendment immunity issue without any need to explore or resolve either the Board's arguments about statutory immunity pursuant to PROMESA § 105 or its arguments about how PROMESA preempts the disclosure obligations in P.R. Const. § 4. And the Board does not suggest any other viable legal theory that would allow us to review these issues now. For these reasons stated, we decline to exercise pendent jurisdiction over the statutory immunity and preemption issues.

CPI's final objection to the Board seeking interlocutory appellate review of the two orders now is based on CPI's contention that neither order can be properly labeled an injunction as the Board claims. The Board indeed asserts in its brief-in-chief that the privilege log order (but not the order denying its motion to dismiss) is an immediately appealable injunction, arguing that if

this court makes it wait to challenge the privilege log order until after the log is completed, the proverbial cat will be "out of the bag" and CPI will know what documents the Board has in its possession. The Board wants us to rely on a case from the District of Columbia Circuit Court of Appeals where that court held that the district court's order requiring the defendant CIA to confirm or deny whether it had the records the plaintiffs requested pursuant to the Freedom of Information Act ("FOIA") was injunctive in nature and appealable under 28 U.S.C. § 1292(a)(1). See Leopold v. Cent. Intel. Agency, 987 F.3d 163, 169 (D.C. Cir. 2021) ("There is no doubt that orders requiring the disclosure of documents are appealable injunctions." (internal quotation marks and citation omitted)). The D.C. Circuit Court recognized that "[t]he absence of particular evidence may sometimes provide clues as important as the presence of such evidence." Id. at 167.

The D.C. Circuit Court distinguished the situation in Leopold from an order examined in a prior case in which the district court had ordered the Secret Service to process a FOIA request for visitor logs to the White House and the Vice President's residence. Id. (citing Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Homeland Sec. ("CREW"), 532 F.3d 860, 862-63 (D.C. Cir. 2008)). The court held that the order in the Secret Service case had not been immediately reviewable as an injunction because the agency had not yet been forced to disclose any

- 21 -

documents, instead only to process the FOIA request, during which the agency would have the opportunity "to withhold some or all of the documents under one or more of FOIA's nine exemptions," CREW, 532 F.3d at 863, at which point, the district court "may agree with the agency, allowing it to withhold the requested records, in which case the government would have no cause to appeal," Leopold, 987 F.3d at 169 (quoting CREW, 532 F.3d at 864).

Not surprisingly, the Board would like us to find the district court's privilege log order akin to Leopold whereas CPI emphasizes the reasoning in CREW. True, the production of the detailed privilege log will tip off CPI to the names of the documents in the Board's possession, but CPI is demanding specific categories of reports and other documents (see supra notes 3 and 8) it already knows are in the Board's possession. The kinds of documents CPI seeks to obtain (such as financial reports and statements related to the Board and the Commonwealth as well as communications between the Board and various entities) do not, in our view, have the same degree of national security sensitivity upon which the CIA relies to carry out its responsibilities related to national security, the disclosure of which would "reveal intelligence sources and methods." Leopold, 987 F.3d at 169. As such, contrary to what the Board wants us to believe, the content of the privilege log would not let the cat "out of the bag" in the same way as the information the CIA would have been forced to

disclose if it had been forced to admit or deny possessing various documents. Instead, we think the Board's situation is more akin to that in CREW -- to ask us to review the privilege log order before the Board has complied and asserted claims of privilege for each document CPI requested that the Board wants to withhold would be premature. See 532 F.2d at 864. Effective review of the district court's ultimate determination about which documents the Board may withhold based on a specific claim of privilege can occur after the Board has produced the privilege log and makes these assertions in the first instance. We conclude, therefore, that the privilege log order is not reviewable in this interlocutory appeal as an injunction pursuant to 28 U.S.C. § 1292(a)(1). For the reasons we have explained throughout this section, the only merits issue we will proceed to examine is Eleventh Amendment sovereign immunity.

## Sovereign Immunity

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. According to the Supreme Court, "a federal suit against state officials on the basis of state law contravenes the Eleventh Amendment when . . . the relief sought and ordered has an impact directly on the

State itself." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 117 (1984). The Board argues that the Eleventh Amendment shields it from this litigation full stop because "CPI is asking a federal court . . . to enforce territorial law . . . against an entity within the Commonwealth's government . . . ." The Board contends this court has repeatedly stated this immunity applies to the Commonwealth of Puerto Rico and that, in PROMESA, Congress neither waived nor abrogated this immunity. CPI responds that the Board is not entitled to this constitutional immunity because the Supreme Court has not yet said this immunity applies to this territory. But, if this court decides the Eleventh Amendment applies, says CPI, then PROMESA § 106(a) abrogates the immunity from suit.[11] The district court assumed the Board was entitled to Eleventh Amendment immunity but concluded Congress, in PROMESA § 106, both waived and abrogated the immunity. Our review of this issue is de novo. Grajales v. P.R. Ports Auth., 831 F.3d 11, 15 (1st Cir. 2016).

As the district court and the Board point out, this court has long treated Puerto Rico like a state for Eleventh Amendment purposes, including recently. See Borrás-Borrero v. Corporación del Fondo del Seguro del Estado, 958 F.3d 26, 33 (1st Cir. 2020)

---

[11] Although CPI argues the Eleventh Amendment does not apply to Puerto Rico and that Congress neither waived nor abrogated this immunity as to Puerto Rico, we understand CPI's counterarguments to be about the Board as an entity of Puerto Rico's government.

- 24 -

(noting "Puerto Rico is treated as a state for Eleventh Amendment purposes" but avoiding consideration of the constitutional immunity question because the state entity clearly prevailed on the merits (quoting Fresenius Med. Care Cardiovascular Res., Inc. v. P.R. and Caribbean Cardiovascular Ctr. Corp., 322 F.3d 56, 61 (1st Cir. 2003))); see also Grajales, 831 F.3d at 15 (acknowledging Puerto Rico "enjoys" sovereign immunity in the same way as the states (citing Jusino Mercado v. Puerto Rico, 214 F.3d 34, 39 (1st Cir. 2000))); González-Feliciano, 695 F.3d at 103 n.15; Maysonet-Robles v. Cabrero, 323 F.3d 43, 50 (1st Cir. 2003); De Leon Lopez v. Corporacion Insular de Seguros, 931 F.2d 116, 121 (1st Cir. 1991).  The Supreme Court, for its part, "has expressly reserved on the question whether Eleventh Amendment immunity principles apply to Puerto Rico." Grajales, 831 F.3d at 15 n.3 (citing P.R. Aqueduct & Sewer Auth., 506 U.S. at 141 n.1 (acknowledging this court's treatment of Puerto Rico as a State for Eleventh Amendment purposes but not reaching the issue of whether the defendant agency was entitled to the immunity as a state entity because this court had not reached the issue)).  The Supreme Court has only once directly addressed whether Puerto Rico is a separate sovereign from the federal government, in a criminal case.  In Puerto Rico v. Sánchez Valle, 579 U.S. 59 (2016), the Court held that while each State is a separate sovereign from the federal government for purposes of the Fifth Amendment's Double Jeopardy Clause, Puerto

- 25 -

Rico is not because the historical source of Puerto Rico's prosecutorial power was derived from the federal government. Id. at 68-69, 75. The Court did not, however, address whether Puerto Rico enjoyed general sovereign immunity.

That this court has a long history of treating Puerto Rico as a state for Eleventh Amendment purposes doesn't resolve whether the Board itself is also entitled to immunity, however. We have said "[a]rms of a state" may be entitled to immunity, Pastrana-Torres v. Corporación De P.R. Para La Difusión Pública, 460 F.3d 124, 126 (1st Cir. 2006) (citing Metcalf & Eddy, Inc. v. P.R. Aqueduct & Sewer Auth., 991 F.2d 935, 939 (1st Cir. 1993)), but this court has not had an opportunity to examine whether the Board is an "arm" of Puerto Rico and this appeal does not appear to drop the question squarely on our bench for us to decide: The Board asserts "[t]here can be no reasonable dispute that the Board is an 'arm of the state' entitled to immunity" because, the Board says, "Congress clearly established the Board as an entity within the Puerto Rico government." For its part, CPI doesn't dispute this statement. Indeed, throughout the dispositive motion briefing below, the parties repeatedly referred to the Board as "an entity within the territorial government" of Puerto Rico, and PROMESA clearly defines the Board this way.[12] 48 U.S.C.

_____

[12] The Supreme Court's only comment to date about the Board's status vis-à-vis Puerto Rico has been to acknowledge PROMESA

- 26 -

§ 2121(c)(1). The district court noted that neither party addressed whether the Board "should be considered an 'arm' of Puerto Rico for Eleventh Amendment purposes," then proceeded to assume without deciding the Board is an "arm" because "the Commonwealth funds it." Because neither the parties nor the district court thought this point to be worth debating or examining in detail, we shall also assume without deciding that the Board is an arm of Puerto Rico, shielded by general Eleventh Amendment immunity, especially because, as we explain below, Congress abrogated, in part, the Board's immunity.

As we've already previewed, the Eleventh Amendment shield is not impenetrable. Sovereign immunity is a privilege which the holder of the immunity can voluntarily waive. Arecibo Cmty. Health Care, Inc. v. Puerto Rico, 270 F.3d 17, 24 (1st Cir. 2001) (citing Clark v. Barnard, 108 U.S. 436, 447 (1883) and Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 675 (1999)). In addition to the waiver-by-litigation-conduct we discussed supra, a sovereign can waive its immunity in

_____

defining the Board as "an entity within" Puerto Rico's government, § 2121(c)(1), and saying "Congress did not simply state that the Board is part of the local Puerto Rican government. Rather, Congress also gave the Board a structure, a set of duties, and related powers all of which are consistent with this statement." Fin. Oversight & Mgmt. Bd. for P.R. v. Aurelius Inv., LLC, 140 S. Ct. 1649, 1661 (2020) (deciding whether the appointment of the Board's members without Senate confirmation violated the Appointments Clause, U.S. Const. Art. II, § 2, cl. 2).

- 27 -

one of two other ways: either by a "clear declaration" in a statute or constitutional provision that the sovereign "intends to submit itself to the jurisdiction of the federal courts," id. (quoting Coll. Sav. Bank, 527 U.S. at 676), or by "participat[ing] in a federal program for which waiver of immunity is a stated condition," id. (citing Mills v. Maine, 118 F.3d 37, 50 (1st Cir. 1997)). Alternatively, "Congress may abrogate the States' constitutionally secured immunity from suit in federal court . . . by making its intention unmistakably clear in the language of the statute," Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 73 (2000) (quoting Dellmuth v. Muth, 491 U.S. 223, 228 (1989)), and "act[ing] pursuant to a valid grant of constitutional authority," Arecibo Cmty. Health Care, Inc., 270 F.3d at 24 n.9 (citing Laro v. New Hampshire, 259 F.3d 1, 5 (1st Cir. 2001)); see also Arecibo Cmty. Health Care, 270 F.3d at 24 n.9 (describing the expression of intention to abrogate as having to be "unequivocal"); Maysonet-Robles v. Cabrero, 323 F.3d 43, 49 (1st Cir. 2003) ("Congress may abrogate . . . [Eleventh Amendment] immunity by expressly authoriz[ing] such a suit pursuant to a valid exercise of power.") (citing Coll. Sav. Bank, 527 U.S. at 670).

The district court concluded that Congress, pursuant to its plenary power to legislate on behalf of Puerto Rico as a United States territory (see supra note 1), included an express waiver of sovereign immunity in PROMESA § 106. Our prior definitions of --

and discussions about -- waiver of Eleventh Amendment immunity, however, indicate that waiver is accomplished by the sovereign holding the privilege of immunity.  See, e.g., Maysonet-Robles, 323 F.3d at 50 (to establish waiver of Eleventh Amendment immunity the plaintiffs had to show Puerto Rico waived its own immunity); Arecibo Cmty. Health Care, 270 F.3d at 24 (noting Eleventh Amendment waiver is a privilege for the sovereign to waive).  We understand the district court's point to be that Congress, using its power to act on behalf of Puerto Rico, could have elected to waive immunity on behalf of the Board, but, as we next explain, under these circumstances, our view is that the district court was on much surer footing with its conclusion that PROMESA § 106 abrogated (rather than waived) the Board's sovereign immunity.  We therefore focus our attention on this method of thwarting the Eleventh Amendment shield.

Whether Congress abrogated the Board's sovereign immunity in PROMESA § 106 is an issue of first impression for this court.  We have not yet closely examined this part of PROMESA, in which Congress said that "any action against the . . . Board, [or] . . . otherwise arising out of [PROMESA] . . . shall be brought in [the district court for the district of Puerto Rico]."  48 U.S.C. § 2126(a).  While we write on a blank slate with respect to this part of PROMESA, however, we are guided by long-standing and well-settled principles of statutory construction.  "[T]he critical

first step in any statutory-interpretation inquiry" is to "closely examine the statutory text." Oliveira v. New Prime, Inc., 857 F.3d 7, 19 (1st Cir. 2017), aff'd, 139 S. Ct. 532 (2019). We give the phrases or words Congress did not specifically define within PROMESA their "ordinary meaning."[13] Id. (quoting United States v. Stefanik, 674 F.3d 71, 77 (1st Cir. 2012)). As we have previously noted when interpreting PROMESA, "[c]ourts interpret statutes to 'give effect, if possible, to every word Congress used,' and . . . reject 'interpretation[s] of the statute that would render an entire subparagraph meaningless.'" In re Fin. Oversight & Mgmt. Bd. for P.R., 7 F.4th 31, 37 (1st Cir. 2021) (quoting Nat'l Ass'n of Mfrs. v. Dep't of Def., 138 S. Ct. 617, 632 (2018) (second alteration in original)). This court "indeed prefer[s] 'the most natural reading' of a statute, one that 'harmonizes the various provisions in [it] and avoids the oddities that [a contrary] interpretation would create.'" N.H. Lottery Comm'n v. Rosen, 986 F.3d 38, 58 (1st Cir. 2021) (quoting Republic of Sudan v. Harrison, 139 S. Ct. 1048, 1057, 1060 (2019) (second and third alterations in original)).

The full text of PROMESA § 106(a) states:

> Except as provided in section 2124(f)(2) of this title (relating to the issuance of an order enforcing a subpoena), and subchapter III (relating to adjustments of debts), any action against the Oversight Board, and

---

[13] Neither party contends the PROMESA language at issue or salient to this issue is ambiguous.

- 30 -

any action otherwise arising out of this chapter, in whole or in part, shall be brought in a United States district court for the covered territory or, for any covered territory that does not have a district court, in the United States District Court for the District of Hawaii.

48 U.S.C. § 2126(a). Paragraph (c) clearly contemplates that declaratory and injunctive relief may be ordered against the Board, as well as orders related to alleged constitutional violations:

Except with respect to any orders entered to remedy constitutional violations, no order of any court granting declaratory or injunctive relief against the Oversight Board, including relief permitting or requiring the obligation, borrowing, or expenditure of funds, shall take effect during the pendency of the action before such court, during the time appeal may be taken, or (if appeal is taken) during the period before the court has entered its final order disposing of such action.

Id. § 2126(c). And paragraph (e) -- "[t]here shall be no jurisdiction in any United States district court to review challenges to the Oversight Board's certification determinations under this chapter" -- plainly provides a limit on the general jurisdiction of the federal district court set out in paragraph (a). Id. § 2126(e); In re Fin. Oversight & Mgmt. Bd. for P.R., 916 F.3d at 112 (acknowledging "PROMESA's general grant of jurisdiction at § 106(a)" when it explained paragraph (e) serves as an exception to it).

The Board says the general grant of jurisdiction in PROMESA § 106(a) is insufficiently direct to conclude Congress intended to abrogate the Board's sovereign immunity. We disagree;

instead, we agree with the district court that, by including § 106, Congress unequivocally stated its intention that the Board could be sued for "any action . . . arising out of [PROMESA]," but only in federal court. Congress was unmistakably clear that it had contemplated remedies for constitutional violations and that injunctive or declaratory relief against the Board may be granted, see PROMESA § 106(c). Congress also provided three clear exceptions to the grant of general jurisdiction -- two in paragraph (a) and one regarding certification orders in paragraph (e). This implies the remainder of paragraph (a) serves as establishing general jurisdiction over all other matters not specifically excepted elsewhere in the section. See In re Fin. Oversight & Mgmt. Bd. for P.R., 7 F.4th at 37 (emphasizing the court's obligation to "give effect . . . to every word Congress used"). "Any action . . . arising out of [PROMESA]" is certainly broad, but given the limitations included within the same section, we have every reason to give paragraph (a) its plain meaning. See Oliveira, 857 F.3d at 19.

True, the language in PROMESA § 106 may not be as precise as when Congress has written "[a] State shall not be immune under the eleventh amendment . . . from an action in a Federal or State court of competent jurisdiction for a violation of this chapter." Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 364 (2001) (citing 42 U.S.C. § 12202 -- Equal Opportunity for Individuals

with Disabilities) (holding no dispute that Congress intended to abrogate immunity). But, as this court recently highlighted, "[t]o abrogate sovereign immunity 'Congress need not state its intent in any particular way.' . . . The Supreme Court has 'never required that Congress use magic words' to make its intent to abrogate clear." In re Coughlin, No. 21-1153, 2022 WL 1438867, at *2 (1st Cir. May 6, 2022) (quoting FAA v. Cooper, 566 U.S. 284, 291 (2012)). "To the contrary, it has explained that the requirement of unequivocal abrogation 'is a tool for interpreting the law and that it does not displace the other traditional tools of statutory construction.'" Id. (quoting Richlin Sec. Serv. Co. v. Chertoff, 553 U.S. 571, 589 (2008)) (cleaned up). Indeed, the Supreme Court has previously deemed broad, "any cause of action arising from" language as "unmistakably clear," signaling Congress's intent to abrogate sovereign immunity from suit. See Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 56-57 (1996) (examining tribal gaming ordinances "vest[ing] jurisdiction in 'the United States district courts . . . over any cause of action [initiated by an Indian tribe] arising from the failure of a State to enter into negotiations [with the Indian tribe] . . . or to conduct such negotiations in good faith'" (quoting 25 U.S.C. § 2710)). In Seminole Tribe, § 2710(d)(7)(A)(ii) and (iii) also granted jurisdiction to the district courts over "any cause of action" initiated by either a State or Indian tribe over certain activity

- 33 -

or by the Secretary of the Interior to enforce some of the statutory procedures. Id. at 57. As the district court in our case pointed out, the language in PROMESA § 106(a) is similar to the statutory language at issue in Seminole Tribe, though the latter specified the plaintiff while PROMESA does not, but PROMESA provides specific exceptions to jurisdiction whereas the tribal gaming regulations did not.[14]

The district court also concluded that to consider PROMESA § 106 anything but clear language of Congress's intent to abrogate the Board's sovereign immunity would render § 106 superfluous. Not so, says the Board, because an action could still

---

[14] Our reliance on the Supreme Court's reasoning in Seminole Tribe is not, as our dissenting colleague claims, misplaced. The dissent emphasizes the nature of the section of the Indian Gaming Regulatory Act in question -- 25 U.S.C. § 2710(d)(7)(A) -- as a "remedial scheme." Indeed, this part of the Act provided jurisdiction in the federal district courts over a claim that a state had not negotiated a Tribal-State compact in good faith, as required by the Act. See 517 U.S. at 49-50. But the designation of this section as "remedial" did not factor into the Court's reasoning about Congress's explicit intent to abrogate sovereign immunity and does not detract from its precedential value to us here. Seminole Tribe stands as a clear and fairly applicable principle that Congress need not expressly say that a "state shall not be immune under the Eleventh Amendment" in order for the Court to find clear language of its intent to abrogate sovereign immunity. See 517 U.S. at 56; see also In re Coughlin, 2022 WL 1438867, at *2 (stating there are no "magic words" for the unequivocal expression of intent to abrogate (quoting FAA, 566 U.S. at 291)). The dissent cannot deny that the Supreme Court held Congress's intent to abrogate sovereign immunity was "unmistakably clear" even though Congress did not so explicitly state in § 2710(d)(7)(A). See Seminole Tribe, 517 U.S. at 56.

be brought under federal law. We note, however, that § 106 doesn't explicitly limit the federal court's jurisdiction to federal law claims. Congress could have included such a limitation, as it included other limitations in § 106(a) and (e), but it did not and, unlike our dissenting colleague who repeatedly asserts § 106 is intended to provide jurisdiction over federal claims only, we decline to read it in.[15] See In re Fin. Oversight & Mgmt. Bd. for P.R., 7 F.4th at 37; N.H. Lottery Comm'n, 986 F.3d at 58. We

---

[15] While Congress did not qualify "claims" as state, federal, or both, it is important to remember that Congress did provide a couple of other limits within PROMESA on the ways in which the Board's actions may be challenged in federal court. To wit, Congress exempted the Board from liability for some types of claims: PROMESA § 105, titled "Exemption from liability for claims," provides that "[t]he Oversight Board, its members, and its employees shall not be liable for any obligation of or claim against the Oversight Board or its members or employees or the territorial government resulting from actions taken to carry out this chapter." 48 U.S.C. § 2125. While we do not reach the merits of the parties' arguments about the scope of this section, there is no doubt that it serves as a limit on the kinds of claims that may be brought against the Board.

Congress also included a supremacy clause: "The provisions of this chapter shall prevail over any general or specific provisions of territory law, State law, or regulation that is inconsistent with this chapter." 48 U.S.C. § 2103. This shield from compliance with inconsistent territory laws and regulations assists the Board as it formulates and executes its plans for Puerto Rico's fiscal recovery, and, though not a limit on the federal court's jurisdiction over claims against it, provides a defense to the Board for use against claims that its actions are in conflict with territorial laws and regulations.

conclude "any action" includes claims based on either federal or state law.[16]

As to the second necessary part of abrogation in the context of sovereign immunity (abrogation through a "valid exercise of power," Arecibo Cmty. Health Care, 270 F.3d at 24 n.9), Congress expressly enacted PROMESA using its power pursuant to the

---

[16] We also note that, before PROMESA was enacted, the status quo ante was that persons in Puerto Rico could sue the Commonwealth for damages in Commonwealth courts, but not in federal courts. PROMESA effectively reversed this venue regime by barring suit in Commonwealth courts while simultaneously allowing suits against the Commonwealth to be brought in federal court. Nothing in the language of § 106 suggests or even implies any intent to affect the merits of such re-routed claims. The Board urges a different view. It would have us find that PROMESA essentially wiped out all such suits by deeming them dead on arrival at the federal forum. But § 106 is not merely a "general authorization for suit in federal court." Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 246 (1985). Rather, it is a claim-channeling provision which requires that claims against the Board that are otherwise cognizable in Commonwealth court must be brought in federal court. This is no reason to think that Congress intended this channeling to dictate the dismissal of such claims. Had Congress intended to bring about such a change in substance rather than venue we think it would have done so expressly. This is so especially for claims of violation of the Commonwealth's constitution because Congress had a direct role in the development of Puerto Rico's Constitution, authorizing the "constitution-making process," amending the draft constitution, and ultimately approving the final Constitution. Sánchez Valle, 579 U.S. at 76; see In re Fin. Oversight & Mgmt. Bd. for P.R., 916 F.3d at 104 (citing Sánchez Valle for its recognition of Congress's role in the creation of Puerto Rico's constitution). Therefore, Congress was certainly familiar with all the provisions within Puerto Rico's Constitution -- including the right to access public documents found in P.R. Const. § 4 (recall this is the right at the center of CPI's suit against the Board) -- and we can expect that Congress had Puerto Rico's constitutional provisions in mind when it was designing the legislation to help Puerto Rico navigate its fiscal crisis.

- 36 -

Territorial Clause (again, see supra note 1), 48 U.S.C. § 2121(b)(2); an exercise of power that neither party has questioned here and that the Board has not challenged in other litigation, see Fin. Oversight & Mgmt. Bd. for P.R. v. Aurelius Inv., LLC, 140 S. Ct. 1649, 1679 (2020) (Sotomayor, J., concurring) ("[T]he parties here do not dispute Congress' ability to enact PROMESA under the Territories Clause in the first place; nor does it seem strictly necessary to call that matter into question to resolve the Appointments Clause concern presented here.").

The Board puts forth some additional arguments about why it thinks the district court erred by concluding PROMESA § 106 constituted a waiver or abrogation of immunity, including that the district court relied on the wrong statute's legislative history, that the district court should not have been swayed by CPI not having any forum in which to sue the Board if the Board was immune from all causes of actions based on territorial law, and that the district court should not have put any stock in the Board's appearances in the PROMESA Title III restructuring cases. We do not address these arguments because none change our conclusion that, based on our de novo review of PROMESA § 106 and the application of the strict abrogation elements, Congress abrogated the Board's sovereign immunity in PROMESA § 106 for the reasons we've stated, to the extent not excepted within this statutory section.

## **FINAL WORDS**

For the reasons stated above, the district court's order denying the Board's motion to dismiss CPI's 2019 Complaint on the basis of sovereign immunity is **affirmed**.  Costs to CPI.


**- DISSENTING OPINION FOLLOWS -**

**LYNCH**, **Circuit Judge, dissenting**.   With respect, I dissent.   The Board is correct that it is entitled to Eleventh Amendment immunity and the case must be dismissed.   The majority's conclusion to the contrary conflicts with Supreme Court precedent, First Circuit precedent, and precedent from other circuits, and will have dire consequences.

## I.

We have long recognized that Puerto Rico is entitled to Eleventh Amendment immunity.   See, e.g., Borrás-Borrero v. Corporación del Fondo del Seguro del Estado, 958 F.3d 26, 33 (1st Cir. 2020); Grajales v. P.R. Ports Auth., 831 F.3d 11, 15 (1st Cir. 2016); Fresenius Med. Care Cardiovascular Res., Inc. v. P.R. & Caribbean Cardiovascular Ctr. Corp., 322 F.3d 56, 61 (1st Cir. 2003).[17]   The Board is part of the Puerto Rico government.   48 U.S.C § 2121(c)(1). The relevant question is whether Congress in § 106 of PROMESA, 48 U.S.C. § 2126, has expressly abrogated that immunity.[18]

---

[17]   The D.C. Circuit has also held that the Eleventh Amendment applies to Puerto Rico; it found that the Puerto Rican Federal Relations Act, 48 U.S.C. § 734, granted Puerto Rico the same sovereign immunity that states possess. See P.R. Ports Auth. v. Fed'l Maritime Comm'n, 531 F.3d 868, 872 (D.C. Cir. 2008) (Kavanaugh, J.).

[18]   We have interlocutory appellate jurisdiction to consider whether the district court's denial of Eleventh Amendment immunity was error.   See Nieves-Márquez v. Puerto Rico, 353 F.3d 108, 123 (1st Cir. 2003).

In my view it is clear that the Board is protected by Eleventh Amendment immunity under numerous doctrines and Eleventh Amendment principles, including that abrogation of Eleventh Amendment immunity must be clearly and unequivocally stated; that grants of jurisdiction to Article III courts alone do not abrogate Eleventh Amendment immunity; that federal courts are prohibited from ordering state officials to conform their conduct to state law under Pennhurst State School & Hospital v. Halderman, 465 U.S. 89 (1984); and that courts may not second-guess Congress where the text of a statute is clear. Further, the provisions of PROMESA on which the majority relies, which provide remedies and instructions as to the exercise of jurisdiction over federal claims, do not support the majority's conclusion that Congress intended to abrogate the Board's Eleventh Amendment immunity. In fact, the other provisions of PROMESA reinforce that Congress did not intend to abrogate immunity.

The majority and the plaintiffs argue that § 106 expressly abrogates Puerto Rico's Eleventh Amendment immunity. "In order to determine whether Congress has abrogated the States' sovereign immunity, we ask two questions: first, whether Congress has unequivocally expressed its intent to abrogate the immunity, and second, whether Congress has acted pursuant to a valid exercise of power[.]" Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 55 (1996) (cleaned up).

In my view, the majority violates the rule that abrogation of Eleventh Amendment immunity will only be found where Congress has unequivocally expressed its intent to abrogate that immunity. See Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 73 (2000) ("Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute." (quoting Dellmuth v. Muth, 491 U.S. 223, 228 (1989))); see also Mjosilovic v. Oklahoma ex rel. Bd. of Regents., 841 F.3d 1129, 1131 (10th Cir. 2016); Burnette v. Carothers, 192 F.3d 52, 57 (2d Cir. 1999); Mills v. Maine, 118 F.3d 37, 41 (1st Cir. 1997).

Section 106(a) is not an abrogation of Eleventh Amendment immunity. It reads:

> (a) Jurisdiction
> Except as provided in section 2124(f)(2) of this title (relating to the issuance of an order enforcing a subpoena), and subchapter III (relating to adjustments of debts), any action against the Oversight Board, and any action otherwise arising out of this chapter, in whole or in part, shall be brought in a United States district court for the covered territory or, for any covered territory that does not have a district court, in the United States District Court for the District of Hawaii.

48 U.S.C. § 2126. From the text of § 106(a) alone, the majority's conclusion is error. Absolutely nothing in the text of this section sets forth an intent to abrogate Eleventh Amendment immunity.

- 41 -

Indeed, the text reveals the choice by Congress not to include language abrogating Eleventh Amendment immunity. In Allen v. Cooper, the Supreme Court held that Congress's intent to abrogate a state's Eleventh Amendment immunity was express where the statute provided that a state "shall not be immune, under the Eleventh Amendment [or] any other doctrine of sovereign immunity, from suit in Federal court." 140 S. Ct. 994, 999, 1001 (2020) (alteration in original) (quoting 17 U.S.C. § 511(a)). Such language is conspicuously absent from PROMESA § 106.[19] The Allen Court found that intent to abrogate was furthered by the language "that in such a suit a State will be liable, and subject to remedies, 'in the same manner and to the same extent as' a private party." 140 S. Ct. at 999, 1001 (quoting 17 U.S.C. § 501(a)). Such language is also absent from PROMESA § 106. Significantly, as noted in Allen, this language was "essentially verbatim" the language the Court recognized as expressly abrogating Eleventh Amendment immunity in Florida Prepaid Postsecondary Education

---

[19] The majority cites to In re Coughlin, No. 21-1153, 2022 WL 1438867 (1st Cir. May 6, 2022) for the correct proposition that Congress need not invoke any particular "magic words" in order to abrogate sovereign immunity, but misses the key language of abrogation Congress used in that case. See id. at *2. In Coughlin, the provision of the Bankruptcy Code at issue stated "sovereign immunity is abrogated as to a governmental unit" with respect to certain provisions of the Code, which we found was a clear statement that the Code abrogated tribal sovereign immunity. Id. at *2, *4 (quoting 11 U.S.C. § 106(a)).

- 42 -

Expense Board v. College Savings Bank, 527 U.S. 627 (1999), which was decided before PROMESA was enacted.  140 S. Ct. at 1001.

The majority goes on to reason that if Congress had wished to bar the assertion of Puerto Rico state law claims, it would have explicitly added more language to § 106 to make that clear.  This proposition is wrong.  See Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 696 (3rd Cir. 1999) (noting that where the statutory text does not evince a clear intent to abrogate, the court may not act as a "super legislature" and find an intent to abrogate in order to avoid outcomes which seem "unjustifiable on policy grounds").  An exclusive grant of jurisdiction to federal courts for claims against the Board does not constitute a clear statement abrogating Eleventh Amendment immunity.  See United States v. Nordic Vill., Inc., 503 U.S. 30, 37-38 (1992) (rejecting argument that provision granting district courts exclusive jurisdiction in bankruptcy proceedings waived sovereign immunity).  In essentially requiring Congress to include a clear statement that it did not intend to abrogate Eleventh Amendment immunity -- rather than finding abrogation only in the presence of an unmistakably clear express statement -- the majority turns the longstanding rule on its head.

Section 106(a) is a limited jurisdiction-granting provision.[20] The Supreme Court has repeatedly held that jurisdiction-granting clauses like § 106 do not abrogate Eleventh Amendment immunity. See Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 246 (1985) ("A general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment."); Blatchford v. Native Vill. of Noatak & Circle Vill., 501 U.S. 775, 786 n.4 (1991) ("The fact that Congress grants jurisdiction to hear a claim does not suffice to show Congress has abrogated all defenses to that claim. The issues are wholly distinct."); see also Mojsilovic, 841 F.3d at 1132 ("A general authorization for suit is insufficient to abrogate the States' sovereign immunity."); BV Eng'g v. UCLA, 858 F.2d 1394, 1397-98, 1397 n.1 (9th Cir. 1988). In each of the cases in which the Supreme Court and our court have recognized Eleventh Amendment immunity, there was a federal statute granting federal jurisdiction. Pennhurst itself involved a grant of jurisdiction under § 504 of the Rehabilitation Act of 1973. 465 U.S. at 92. This must be so, as federal courts exercise jurisdiction only insofar as Congress extends it by statute. See Sheldon v. Sill,

---

[20] The majority argues that § 106(a) is actually a "claim-channeling" provision. Not only does the text not support this reading, no authority supports the proposition that a claim-channeling provision is a clear statement abrogating Eleventh Amendment immunity.

49 U.S. 441, 449 (1850); see also R. Fallon, et al., Hart & Wechsler's The Federal Courts and the Federal System 295-97 (7th ed. 2015). The majority errs in treating the statutory grant of jurisdiction in § 106 as not only a necessary but also a sufficient condition to hale Puerto Rico into federal court.

The majority tries to justify its reliance on a jurisdiction-granting provision to find an intent to abrogate by citing to a single case, Seminole Tribe. In Seminole Tribe, the Supreme Court considered the Indian Gaming Regulatory Act's remedial scheme for ensuring the formation of Tribal-State compacts, which grants federal courts jurisdiction over "any cause of action initiated by an Indian tribe arising from the failure of a State to enter into negotiations with the Indian tribe for the purpose of entering into a Tribal-State compact," and only after the tribe has made good-faith efforts to engage in such negotiations. 517 U.S. at 49-50 (quoting §§ 2710(d)(7)(A)(i) and (B)(i)). The Court found that this grant of jurisdiction over a single type of lawsuit between a tribe and a state, after elaborate statutory criteria had been met, clearly demonstrated Congress's intent to abrogate states' Eleventh Amendment immunity in such suits. Id. at 56-57. In contrast, § 106(a) grants federal district courts jurisdiction over actions against the Board without reference to any particular type of action. The majority incorrectly suggests that the Court in Seminole Tribe was

considering a similarly broad provision, when in fact, as the Court there made clear, the grant of jurisdiction in that case was circumscribed and accompanied by an "elaborate remedial scheme." Id. at 50. Seminole Tribe does not, contrary to the majority, provide justification for a departure from the usual rule that a general grant of jurisdiction is not sufficient to abrogate Eleventh Amendment immunity, and is certainly not an adequate foundation for its argument that § 106(a) does so.

The majority's conclusion also violates the holding of Pennhurst. In Pennhurst, the Supreme Court considered an action against state officials brought under the Ex Parte Young doctrine, which allows suits for constitutional violations to be brought against state officials that the Eleventh Amendment would normally bar. 465 U.S. at 102. The Supreme Court found that the Ex Parte Young exception does not apply in suits brought against state officials for violations of state law, because Article III courts ordering state officials to comply with state law "conflicts directly with the principles of federalism that underlie the Eleventh Amendment." 465 U.S. at 106; see also Cuesnongle v. Ramos, 835 F.2d 1486, 1496 (1st Cir. 1987) ("[S]overeign immunity prohibits federal courts from ordering state officials to conform their conduct to state law."). Yet that is now precisely what the majority holds is required in this case. The majority is ordering the Board to comply with Puerto Rico disclosure laws despite the

Board's Eleventh Amendment immunity. Pennhurst clearly bars this outcome.

Where the language of a provision has a plain and unambiguous meaning, "the sole function of the courts is to enforce it according to its terms." See Stauffer v. IRS, 939 F.3d 1, 7 (1st Cir. 2019) (quoting In re Fin. Oversight & Mgmt. Bd. for P.R., 919 F.3d 121, 128 (1st Cir. 2019)). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." Owner-Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc., 651 F.3d 857, 862 (8th Cir. 2011) (quoting United States v. I.L., 614 F.3d 817, 820 (8th Cir. 2010)). It is clear from § 106(a) that this section of PROMESA does not abrogate Eleventh Amendment immunity. The majority's attempts to read abrogation into this provision by relying on other provisions of PROMESA are unavailing. The majority argues that the fact that Congress in § 106(c)[21] contemplates remedies for constitutional

---

[21] Section 106(c) reads:

(c) Timing of relief
Except with respect to any orders entered to remedy constitutional violations, no order of any court granting declaratory or injunctive relief against the Oversight Board, including relief permitting or requiring the obligation, borrowing, or expenditure of funds, shall take effect during the pendency of the action before such court, during the time appeal may be taken, or (if appeal is taken) during the period before the court has entered its final order disposing of such action.

- 47 -

violations somehow supports its abrogation holding. That is not so. Such remedies are made available as to the federal causes of action over which § 106 provides jurisdiction. The Rehabilitation Act of 1973, which the Court found not to abrogate Eleventh Amendment immunity in Atascadero, provided that "[t]he remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 shall be available to any person aggrieved" under the statute. Atascadero, 473 U.S. at 245 (quoting 29 U.S.C. § 794a). The provision of remedies for federal claims is not evidence of abrogation. The majority's argument is also unconvincing because PROMESA does not provide any remedies.

The majority attempts to justify its abrogation conclusion with reference to the "except as provided" clause of § 106(a) and the limitation on jurisdiction contained in § 106(e).[22] These provisions cabining the general grant of jurisdiction in § 106(a) do not support the majority's position on abrogation. Abrogation must be express and clearly stated, and may not, as a matter of law, be found by implication.[23] See Kimel,

---

48 U.S.C. § 2126(c).

[22] Section 106(e) states, "There shall be no jurisdiction in any United States district court to review challenges to the Oversight Board's certification determinations under this chapter."

[23] The majority's argument that Congress's involvement in the development of Puerto Rico's constitution somehow supports its

- 48 -

528 U.S. at 73. Further, to the extent that the majority purports to be relying on the canon that all words must be given effect, the Board's reading gives effect to all of the clauses. The Board may be sued, in federal court only, for violations of PROMESA and for violations of the federal constitution.

The majority's reading is not consistent with other provisions of PROMESA, under which Congress has created federal law obligations for the Board, to the exclusion of state law obligations. Read in concert with § 106, these provisions, contrary to the majority's reading, demonstrate that Congress indeed intended for the Eleventh Amendment to operate to shield the Board from the Puerto Rico disclosure obligations here at issue. Congress, in enacting PROMESA, worked to strike a balance between transparency, necessary to permit public oversight and maintain public confidence, and confidentiality, necessary to permit the Board to work effectively at its difficult and often unpopular tasks.

For example, PROMESA requires the Board to make public the findings of certain investigations, see 48 U.S.C. § 2124(p) and any "gifts, bequests or devises and the identities of the donors," see 48 U.S.C. § 2124(e), and it requires the Board to "submit a report to the President, Congress, the Governor and the

---

abrogation holding is another instance of inferential reasoning in lieu of finding a clear statement.

Legislature" "[n]ot later than 30 days after the last day of each fiscal year," 48 U.S.C. § 2148(a). It bars other disclosures, forbidding the Board to disclose the contents of certain tax reports. See 48 U.S.C. § 2148(b)(2). PROMESA gives a great degree of independence to the Board to determine what materials should be disclosed, allowing the Board to hold executive sessions which are closed to the public, see 48 U.S.C. § 2121(h)(4); specifying that "[n]either the Governor nor the Legislature may[] . . . exercise any control, supervision, oversight, or review over the Oversight Board or its activities," 48 U.S.C. § 2128(a)(1); and directing that "[t]he Oversight Board may incorporate in its bylaws, rules, and procedures . . . such rules and regulations of the territorial government as it considers appropriate to enable it to carry out its activities under this Act with the greatest degree of independence practicable," 48 U.S.C. § 2121(h)(3). Far from "giv[ing] effect to every word and phrase" of the statute, see City of Providence v. Barr, 954 F.3d 23, 37 (1st Cir. 2020) (quoting Narragansett Indian Tribe v. Rhode Island, 449 F.3d 16, 26 (1st Cir. 2006) (en banc)), the majority's interpretation of § 106 as abrogating Eleventh Amendment immunity renders these provisions less meaningful.[24]

---

[24] We focus our attention on the majority's reasoning, but the district court opinion reaching the same conclusion is also in error. The district court found that to grant recognition of the Board's Eleventh Amendment immunity would render PROMESA § 106

- 50 -

## II.

There are enormous adverse consequences which flow from the majority's reading of § 106 as an abrogation of the Board's Eleventh Amendment immunity. The majority's holding that the Board cannot avail itself of Eleventh Amendment immunity will have implications far into the future, in addition to posing burdens on the Board in this case and beyond this case.[25]

"superfluous." Centro de Periodismo Investigativo v. Fin. Oversight & Mgmt. Bd., No. 17-1743, 2018 WL 2094375, at *6 n.12 (D.P.R. May 4, 2018). That is plainly not so. Section 106 permits suit against the Board in federal court for federal law claims against it, including claims that the Board has exceeded its authority under PROMESA, see, e.g., In re Fin. Oversight & Mgmt. Bd. for P.R., 945 F.3d 3, 5 (1st Cir. 2019), and claims for injunctive relief for violations of the federal constitution, see Ex Parte Young, 209 U.S. 123, 160 (1908). Section 106 ensures that claims against the Board, which might otherwise be brought in the commonwealth courts, are the exclusive province of the federal courts.

The district court's conclusion, that Congress waived the Board's Eleventh Amendment immunity, which the plaintiffs also have argued on appeal, is both wrong and misguided. Centro de Periodismo, 2018 WL 2094375, at *5. It is wrong for the same reason that the abrogation holding is wrong: the statute does not clearly evince an intent to waive Eleventh Amendment immunity. Moreover, the district court mistakenly cited the legislative history of a bankruptcy provision rather than PROMESA § 106, describing the provision as a "waiver of sovereign immunity." Centro de Periodismo, 2018 WL 2094375, at *6 (quoting D. Austin, Cong. Rsch. Serv., R44532, The Puerto Rico Oversight, Management, and Economic Stability Act (PROMESA; H.R. 5278, S. 2328) 36 (2016)).

[25] Puerto Rico, for example, has successfully claimed Eleventh Amendment immunity in numerous cases in a variety of contexts. See, e.g., In re San Juan Dupont Plaza Hotel Fire Litig., 888 F. 2d 940, 943 (1st Cir. 1989) (affirming dismissal, on Eleventh Amendment grounds, of claims against the Tourism Company of Puerto Rico in mass tort action); Llewellyn-Waters v.

- 51 -

In this case, the Board has been ordered to produce privilege logs demonstrating why tens of thousands of documents fall under various privileges that it has claimed. The Board's brief explains why this is an enormous burden and interferes with the serious tasks Congress has given it. Because this Puerto Rico cause of action is not limited by a statute of limitations, it is predictable that litigants will try to seek documents created or relied on by the Board since its creation in 2016. As this case demonstrates, the majority's holding has allowed and will continue to allow the Board to be drawn into lengthy litigation with heavy discovery burdens.

**III.**

Eleventh Amendment protection reflects the Constitution's structural design, and where, as here, Congress has not expressly abrogated Eleventh Amendment immunity and the sovereign has not waived it, the federal courts must honor that

---

Univ. of P.R., 56 F. Supp. 2d 159, 161-62 (D.P.R. 1999) (dismissing claims against University of Puerto Rico in negligence action on Eleventh Amendment grounds); Dogson v. Univ. of P.R., 26 F. Supp. 2d 341, 341, 344 (D.P.R. 1998) (dismissing breach of contract, negligence, and sex discrimination claims brought under Puerto Rico law against the University of Puerto Rico on Eleventh Amendment grounds); Trans Am. Recovery Servs. v. Puerto Rico Mar. Auth., 820 F. Supp. 38, 38-39 (D.P.R. 1993) (dismissing, on Eleventh Amendment grounds, breach of contract action against Puerto Rico's Maritime Shipping Authority); Rodriguez Diaz v. Sierra Martinez, 717 F. Supp. 27, 29, 31 (D.P.R. 1989) (dismissing medical negligence claims against University of Puerto Rico and the Puerto Rico Medical Services Administration on Eleventh Amendment grounds).

protection and dismiss the case. The majority today finds congressional intent to abrogate absent any express indication of such intent in the text of the statute, violating the Supreme Court's mandate not to do so. See, e.g., Seminole Tribe, 517 U.S. at 55-56. The majority decision finds an intent to abrogate in a general grant of jurisdiction, contrary to decisions of the Supreme Court and other circuits. See, e.g., Atascadero, 473 U.S. at 246; see also Burnette, 192 F.3d at 57; BV Engineering, 858 F.2d at 1397-98; Gary A. v. New Trier High Sch. Dist. No. 203, 796 F.2d 940, 944 (7th Cir. 1986). It violates the well-established principle of Pennhurst, that federal courts may not order state officials to comply with state law, a principle which our circuit and our sister circuits repeatedly have upheld. See, e.g., Vega v. Semple, 963 F.3d 259, 284 (2d Cir. 2020); Doe v. Regents of the Univ. of Cal., 891 F.3d 1147, 1152-53 (9th Cir. 2018); O'Brien v. Mass. Bay Transp. Auth., 162 F.3d 40, 44 (1st Cir. 1998). The implications, not only for the Board's future liability, but for Eleventh Amendment doctrine going forward, are significant, and today's decision should not go uncorrected.

I respectfully dissent.