*PRELIMINARY PRINT*

VOLUME 598 U. S. PART 2
PAGES 339–355

# OFFICIAL REPORTS

OF

# THE SUPREME COURT

MAY 11, 2023

Page Proof Pending Publication

REBECCA A. WOMELDORF

REPORTER OF DECISIONS



NOTICE: This preliminary print is subject to formal revision before the bound volume is published.   Users are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D.C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

## FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO *v.* CENTRO DE PERIODISMO INVESTIGATIVO, INC.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

No. 22–96.   Argued January 11, 2023—Decided May 11, 2023

In 2016, Congress passed the Puerto Rico Oversight, Management, and Economic Stability Act (PROMESA), 48 U. S. C. § 2101 *et seq.*, to deal with a fiscal crisis in Puerto Rico brought about by soaring public debt. PROMESA establishes a system for overseeing Puerto Rico's finances, while also enabling the Commonwealth to gain bankruptcy protections similar to those available under the Federal Bankruptcy Code.   See *Financial Oversight and Management Bd. for Puerto Rico* v. *Aurelius Investment, LLC*, 590 U. S. ——, ——.   The statute creates the Financial Oversight and Management Board for Puerto Rico—petitioner in this case—as an "entity within the territorial government" of Puerto Rico. § 2121(c)(1).   Under PROMESA, the Board approves the Commonwealth's fiscal plans and budgets, supervises its borrowing, and represents Puerto Rico in so-called Title III cases—judicial debt-restructuring proceedings modeled on federal bankruptcy proceedings. Beginning in 2016, respondent Centro de Periodismo Investigativo, Inc. (CPI)—a nonprofit media organization that has reported on Puerto Rico's fiscal crisis—asked the Board to release various documents relating to its work.   When CPI's requests went unfulfilled, it sued the Board in the United States District Court for Puerto Rico, citing a provision of the Puerto Rican Constitution interpreted to guarantee a right of access to public records.   The Board moved to dismiss on sovereign immunity grounds, but the District Court rejected that defense.   The First Circuit affirmed.   The court began by citing Circuit precedent that Puerto Rico enjoys sovereign immunity, and it assumed without deciding that the Board shares in that immunity.   But it then held that PROMESA—particularly its jurisdictional provision, Section 2126(a)—clearly abrogates the Board's immunity.

*Held*: Nothing in PROMESA—including its jurisdictional provision, Section 2126(a)—categorically abrogates any sovereign immunity the Board enjoys from legal claims.   This Court assumes without deciding that Puerto Rico is immune from suit in United States district court, and that the Board partakes of that immunity.   See *Cutter* v. *Wilkinson*, 544 U. S. 709, 718, n. 7.

This Court has often held that Congress must make its intent to abrogate sovereign immunity "unmistakably clear in the language of the statute." *Kimel* v. *Florida Bd. of Regents*, 528 U. S. 62, 73. The Court has applied that clear-statement rule in cases naming the federal government, States, and Indian tribes as defendants. And it has found that standard met in only two situations: when a statute says, in so many words, that it is stripping immunity from a sovereign entity, *e. g.*, 35 U. S. C. §296(a), and when a statute creates a cause of action and authorizes suit against a government on that claim, see, *e. g.*, *Kimel*, 528 U. S., at 73–74. PROMESA fits neither of these molds. Except by reference to the Bankruptcy Code in Title III debt-restructuring proceedings, see 11 U. S. C. §106(a); 48 U. S. C. §2161(a), PROMESA does not provide that the Board or Puerto Rico is subject to suit. Nor does PROMESA create any cause of action for use against the Board or Puerto Rico. Thus, Congress has not, through a means this Court has recognized, "ma[de] its intention" to abrogate immunity "unmistakably clear." *Kimel*, 528 U. S., at 73.

CPI claims to identify the required clear statement in PROMESA's establishment of a judicial review scheme. Section 2126(a) provides that "any action against the Oversight Board, and any action otherwise arising out of" PROMESA, "shall be brought" in the Federal District Court for Puerto Rico. In CPI's view, that provision—especially when combined with Section 2126(c)'s allusion to "declaratory or injunctive relief against the Oversight Board"—contemplates that the Board would be subject to suit in federal court. But those provisions serve a function even absent a categorical abrogation of immunity, in cases where the Board's immunity has been waived or abrogated by other statutes. For example, Title VII of the Civil Rights Act abrogates the immunity of "governments" and "governmental agencies" from all actions it authorizes. 42 U. S. C. §§2000e(a)–(b). If a Board employee were fired because of race, Section 2126(a) would tell the employee where to bring the suit and Section 2126(c) would govern the timing of injunctive and declaratory relief. Nor do protections that PROMESA provides the Board from litigation fill the gap. Again, CPI is wrong to think those provisions "superfluous" unless PROMESA generally abrogates the Board's immunity. Section 2125's protection of Board members from monetary liability would do work whenever some other law abrogated or waived the Board's immunity from specific claims. In such a case, the claim could go forward, but Section 2125 would stop the award of money damages. And Section 2126(e)'s bar on challenges to the Board's fiscal and budgetary decisions would do work whenever a plaintiff sought to get around the Board's sovereign immunity via an *Ex parte Young* action against an individual Board member. See *Vir-*

*ginia Office for Protection and Advocacy* v. *Stewart*, 563 U. S. 247, 254–255.

In short, nothing in PROMESA makes Congress's intent to abrogate the Board's sovereign immunity unmistakably clear. The statute does not explicitly strip the Board of immunity or expressly authorize the bringing of claims against the Board. And its judicial review provisions and liability protections are compatible with the Board's generally retaining sovereign immunity. Pp. 345–351.

35 F. 4th 1, reversed and remanded.

KAGAN, J., delivered the opinion of the Court, in which ROBERTS, C. J., and ALITO, SOTOMAYOR, GORSUCH, KAVANAUGH, BARRETT, and JACKSON, JJ., joined. THOMAS, J., filed a dissenting opinion, *post*, p. 351.

*Mark D. Harris* argued the cause for petitioner. With him on the briefs were *Martin J. Bienenstock*, *Shiloh A. Rainwater*, *Timothy W. Mungovan*, *John E. Roberts*, *William D. Dalsen*, and *Lucas Kowalczyk*.

*Aimee W. Brown* argued the cause for the United States as *amicus curiae* urging vacatur. With her on the brief were *Solicitor General Prelogar*, *Deputy Solicitor General Kneedler*, and *Michael S. Raab*.

*Sarah M. Harris* argued the cause for respondent. With her on the brief were *Lisa S. Blatt*, *Judith Berkan*, *Rafael E. Rodríguez Rivera*, *Steven P. Lausell Recurt*, *Luis J. Torres Asencio*, and *Carlos F. Ramos-Hernández*.\*

———————

\*Briefs of *amici curiae* urging affirmance were filed for Asociación de Periodistas de Puerto Rico by *Ariadna Michelle Godreau Aubert* and *Verónica González Rodríguez*; for Clemente Properties, Inc., et al. by *Tanaira Padilla-Rodríguez*; for Espacios Abiertos by *Brendan Benedict*; for GFR Media, LLC, by *Rafael Cox Alomar* and *Pedro Busó-García*; for LatinoJustice PRLDEF et al. by *Steven A. Zalesin*; for Public Citizen by *Scott L. Nelson* and *Allison M. Zieve*; for Puerto Rican Legal Scholars by *Hiram Meléndez-Juarbe*; for the Reporters Committee for Freedom of the Press et al. by *Theodore J. Boutrous, Jr.*, *Matthew D. McGill*, *Amir C. Tayrani*, *Katherine Moran Meeks*, *David W. Casazza*, and *Bruce D. Brown*; and for the Speaker of the Puerto Rico House of Representatives by *Emil Rodríguez-Escudero* and *Jorge Martínez-Luciano*.

A brief of *amici curiae* was filed for the Institute for Energy Economics and Financial Analysis et al. by *Jessica E. Méndez-Colberg* and *Rolando Emmanuelli-Jiménez*.

JUSTICE KAGAN delivered the opinion of the Court.

A recently enacted federal statute establishes a financial oversight board within the Commonwealth of Puerto Rico's government. The question presented is whether the statute categorically abrogates (legalspeak for eliminates) any sovereign immunity the board enjoys from legal claims. We hold it does not. Under long-settled law, Congress must use unmistakable language to abrogate sovereign immunity. Nothing in the statute creating the board meets that high bar.

I

Congress passed the Puerto Rico Oversight, Management, and Economic Stability Act of 2016 (PROMESA), 48 U. S. C. § 2101 *et seq.*, to deal with a fiscal emergency. Puerto Rico's public debt had soared, to more than the annual output of the island's economy. The Commonwealth could not service that level of debt through the bond markets. And it was not eligible to restructure debt under the Federal Bankruptcy Code. PROMESA offered a path out of the crisis, helping Puerto Rico "to achieve fiscal responsibility and access to the capital markets." § 2121(a). The idea was to set up a system for overseeing Puerto Rico's finances, while also enabling the Commonwealth to gain bankruptcy protections similar to those available under the Code. See *Financial Oversight and Management Bd. for Puerto Rico* v. *Aurelius Investment, LLC*, 590 U. S. ——, —— – —— (2020).

PROMESA creates, as its centerpiece, the Financial Oversight and Management Board for Puerto Rico—the petitioner here. The statute describes the seven-member Board as an "entity within the territorial government" of Puerto Rico. § 2121(c)(1). And this Court has affirmed that the Board's structure, duties, and powers make it "part of the local Puerto Rican government." *Id.*, at ———. Under PROMESA, the Board approves and enforces the Commonwealth's fiscal plans and budgets, and supervises the Com-

monwealth's borrowing. See §§ 2141–2144, 2147. The Board also represents Puerto Rico in so-called Title III cases—judicial proceedings, modeled on federal bankruptcy proceedings, for restructuring the Commonwealth's (and its instrumentalities') debt. See §§ 2161–2177.

With one exception, PROMESA says nothing explicit about abrogating sovereign immunity. The exception is for Title III cases, and comes via the Federal Bankruptcy Code. PROMESA incorporates, as part of its mechanism for restructuring debt, the Code's express abrogation of sovereign immunity. See § 2161(a) (incorporating 11 U. S. C. § 106 for "case[s] under [Title III]"). But as to all other matters PROMESA addresses, Congress did not mention sovereign immunity. In particular, no provision states that it is abrogating any immunity the Board possesses from legal claims.

At the same time, several provisions of PROMESA contemplate that, even outside the Title III context, the Board may confront legal claims against it. Most fundamentally, Section 2126(a), entitled "Jurisdiction," states that "any action against the Oversight Board, and any action otherwise arising out of" PROMESA, "shall be brought" in the Federal District Court sitting in Puerto Rico.[1] And Section 2126(c) anticipates that those actions may lead to orders "granting declaratory or injunctive relief against the Oversight Board"; under the provision, such orders cannot take effect until the litigation is over.

On the flipside, PROMESA sets certain limits on litigation targeting the Board. Section 2125 forecloses monetary liability against the Board, its members, and its employees for "actions taken to carry out" the statute. And Section 2126(e) provides that no district court will have jurisdic-

---

[1] The section contains two exceptions not relevant here—one for applications to enforce subpoenas, the other for certain actions related to Title III cases. See 48 U. S. C. §§ 2124(f)(2), 2166(a)(2).

tion over challenges to the Board's "certification determinations"—mainly, decisions approving Puerto Rico's fiscal plans and budgets. See §§ 2141(e), 2142(e) (describing those determinations).

The suit before us demands that the Board release various documents relating to its work. Respondent Centro de Periodismo Investigativo, Inc. (CPI) is a nonprofit media organization that has published many reports on Puerto Rico's fiscal crisis and the debt-restructuring process. In 2016, CPI asked the Board to turn over a broad array of materials, including communications between the Board's members and Puerto Rican and U. S. officials. When the request went unanswered, CPI sued the Board in the Federal District Court in Puerto Rico. CPI cited a provision of the Puerto Rican Constitution interpreted to guarantee a right of access to public records. And it requested an injunction ordering the records' release.

The Board moved to dismiss the suit on the ground that, as an arm of the Puerto Rican government, it enjoys sovereign immunity. The District Court denied the motion, reasoning that Congress had abrogated the Board's immunity in PROMESA—particularly, in Section 2126(a)'s jurisdictional provision. See App. to Pet. for Cert. 74a–76a. While the parties fought over unresolved privilege issues, CPI brought a second suit seeking another set of documents. The Board again invoked sovereign immunity, and the court again denied the defense. See *id.*, at 56a–57a. Orders in both suits were consolidated for appeal.

The Court of Appeals for the First Circuit affirmed the denial of immunity, over a dissent. See 35 F. 4th 1 (2022). The court began by citing Circuit precedent that Puerto Rico (like a State or Indian tribe) enjoys sovereign immunity. It then "assume[d] without deciding" that the Board shares in Puerto Rico's immunity, noting that CPI had not contested that issue. *Id.*, at 15. That was the Board's final piece of

good news—for the court next held that PROMESA abrogates the Board's (assumed) immunity. Congress may abrogate sovereign immunity, the court noted, "by making its intention unmistakably clear in the language of the statute." *Ibid.* (quoting *Kimel* v. *Florida Bd. of Regents*, 528 U. S. 62, 73 (2000)). And Congress had done so, the court held, in Section 2126(a): The "grant of jurisdiction" there "unequivocally stated [Congress's] intention that the Board could be sued" in federal district court. 35 F. 4th, at 17. The court found additional support for its holding in Sections 2126(c) and (e). The former, the court reasoned, "contemplates" orders of "declaratory and injunctive relief" against the Board. *Ibid.* And the latter, in making certification challenges unreviewable, "implies" that all other claims against the Board fall within Section 2126(a)'s scope. *Ibid.* Judge Lynch disagreed. She would have held that Congress had not adequately "set[ ] forth an intent to abrogate" the Board's immunity, whether in Section 2126(a)'s jurisdictional grant or in any other provision. *Id.*, at 21.

We granted certiorari, 598 U. S. —— (2022), and now reverse.

## II

The question on which we granted certiorari is whether PROMESA—and particularly its jurisdictional provision—abrogates the Board's immunity. See Brief for Oversight Board i. As thus framed, the question asks only about abrogation, while taking the Board's underlying immunity as a given. That framing accords with how this case played out in the courts below. Because Circuit precedent had settled Puerto Rico's own immunity, the lower courts barely addressed the question. See, *e. g.*, 35 F. 4th, at 13–14. Similarly for the Board's immunity. CPI never argued that the Commonwealth's immunity did not extend to the Board; and for that reason, the courts below simply assumed the Board's immunity before turning to the abrogation issue. See, *e. g.*,

346 FINANCIAL OVERSIGHT AND MANAGEMENT BD. FOR
P. R. *v.* CENTRO DE PERIODISMO INVESTIGATIVO, INC.

Opinion of the Court

*id.*, at 14–15. We took the case on those terms, and we resolve it on those terms. See, *e. g.*, *Cutter* v. *Wilkinson*, 544 U. S. 709, 718, n. 7 (2005) ("[W]e are a court of review, not of first view"). That means we assume without deciding that Puerto Rico is immune from suit in federal district court, and that the Board partakes of that immunity. We address only whether, accepting those premises, PROMESA effects an abrogation.[2]

The standard for finding a congressional abrogation is stringent. Congress, this Court has often held, must make its intent to abrogate sovereign immunity "unmistakably clear in the language of the statute." *E. g.*, *Kimel*, 528 U. S., at 73 (internal quotation marks omitted); see also *Sossamon* v. *Texas*, 563 U. S. 277, 287 (2011) ("[W]here a statute is susceptible of multiple plausible interpretations," we will not read it to strip immunity). We have invoked that clear-statement rule, and applied it equivalently, in cases naming the federal government, States, and Indian tribes as defendants. See, *e. g.*, *FAA* v. *Cooper*, 566 U. S. 284, 290–291 (2012); *Kimel*, 528 U. S., at 73; *Michigan* v. *Bay Mills Indian*

---

[2] CPI now asks us to extend our review to the underlying immunity issue. CPI still does not contest that the Board shares in whatever immunity Puerto Rico possesses. But it argues here that Puerto Rico's immunity applies only in its own courts—not in federal courts. See Brief for CPI 29–32. The Government also urges us to address Puerto Rico's immunity, though to come out the other way: It reads our precedents as supporting immunity in both territorial and federal courts. See Brief for United States as *Amicus Curiae* 16–19 (citing, *e. g.*, *Porto Rico* v. *Rosaly y Castillo*, 227 U. S. 270, 273–277 (1913)). We decline the two invitations for the reasons just stated: The proceedings below did not examine those matters, and we agreed to tackle only the abrogation question. Cf. *Puerto Rico Aqueduct and Sewer Authority* v. *Metcalf & Eddy, Inc.*, 506 U. S. 139, 141, n. 1 (1993) (similarly declining to address whether Puerto Rico has sovereign immunity when holding that an order denying immunity for one of its instrumentalities is immediately appealable). We also note that this suit—in which Puerto Rico itself plays no role—would be a singularly inapt vehicle to resolve Puerto Rico's immunity.

*Community*, 572 U. S. 782, 790 (2014).[3]   CPI argues that the rule should not likewise apply to Puerto Rico, citing Congress's plenary power over Territories.   See Brief for CPI 25–26 ("The concept of plenary power" is "incompatible with forcing Congress to express its intent unequivocally").   But we have similarly described Congress's power over the tribes, and still demand that Congress "unequivocally express" an intent to abrogate their immunity.   *Bay Mills*, 572 U. S., at 790 (internal quotation marks omitted); see *ibid.* ("Although Congress has plenary authority over tribes, courts will not lightly assume that Congress in fact intends" to abrogate their immunity).   Our precedent thus conveys a consistent message: If a defendant enjoys sovereign immunity (which we are assuming the Board does), abrogation requires an "unequivocal declaration" from Congress.   *Dellmuth* v. *Muth*, 491 U. S. 223, 232 (1989).

The Court has found that standard met in only two situations.   The first is when a statute says in so many words that it is stripping immunity from a sovereign entity.   Congress, for example, has provided that States "shall not be immune," under any "doctrine of sovereign immunity, from suit in Federal court" for patent or copyright infringement. 35 U. S. C. §296(a); 17 U. S. C. §511(a).   Those provisions, we have noted, "could not have made any clearer Congress's intent" to abrogate immunity.   *Allen* v. *Cooper*, 589 U. S. ——, —— (2020) (internal quotation marks and alterations omitted).   The second is when a statute creates a cause of action and authorizes suit against a government on that claim.   Take the Age Discrimination in Employment Act (ADEA) or the Family and Medical Leave Act (FMLA).   We held that each abrogated sovereign immunity by authorizing suits against employers—specifically including govern-

―――――――――

[3] Of course, when the federal government is the defendant, the clearstatement rule operates to identify a waiver of its own immunity, rather than an abrogation of another government's.

348  FINANCIAL OVERSIGHT AND MANAGEMENT BD. FOR
P. R. *v.* CENTRO DE PERIODISMO INVESTIGATIVO, INC.

Opinion of the Court

ments—for violating the statute's provisions (*i. e.*, for discriminating or denying leave). See *Kimel*, 528 U. S., at 73–74; *Nevada Dept. of Human Resources* v. *Hibbs*, 538 U. S. 721, 726 (2003). Or consider the Indian Gaming Regulatory Act (IGRA). We likewise saw an abrogation in its authorization of tribal suits against States for violating their statutory duty to negotiate about gaming compacts. See *Seminole Tribe of Fla.* v. *Florida*, 517 U. S. 44, 56–57 (1996). True enough, none of those Acts expressly declared sovereigns non-immune (as the patent and copyright laws did). But all expressly authorized suits against sovereigns in service of enforcing statutory requirements. And recognizing immunity would have negated those authorizations: The very suits allowed against governments would automatically have been dismissed.

PROMESA fits neither of those two molds. Except in Title III debt-restructuring proceedings (not at issue here), the statute does not provide that the Board or Puerto Rico is subject to suit. See *supra*, at 343. And indeed, the exception implies the opposite as a general rule. The immunity provision that PROMESA borrows from the Bankruptcy Code for Title III cases states: "[S]overeign immunity is abrogated as to a governmental unit," including a "Territory." 11 U. S. C. § 106(a), incorporated by 48 U. S. C. § 2161(a); 11 U. S. C. § 101(27). Congress chose not to adopt similar language to govern other kinds of litigation involving the Board. See, *e. g.*, *Badgerow* v. *Walters*, 596 U. S. ——, —— (2022) ("When Congress includes particular language in one section of a statute but omits it in another section of the same Act, we generally take the choice to be deliberate"). Too, PROMESA does not create any cause of action (or otherwise approve any claim) for use against the Board or Puerto Rico. So recognizing immunity under PROMESA would not—as in the ADEA, FMLA, and IGRA cases—authorize a suit against a sovereign with one hand, only to bar it with the other. Instead, immunity would operate in the

ordinary way—to protect a sovereign from a host of claims Congress has not otherwise said may proceed. The upshot is evident: Congress has not, through a means we have recognized, "ma[de] its intention" to abrogate immunity "unmistakably clear." *Kimel*, 528 U. S., at 73 (internal quotation marks omitted).

CPI contends we can still find a clear statement in PROMESA, based on the statute's establishment of a judicial review scheme. The primary provision in CPI's argument (as in the First Circuit's, see *supra*, at 345) is Section 2126(a): "[A]ny action against the Oversight Board, and any action otherwise arising out of" PROMESA, "shall be brought" in the Federal District Court for Puerto Rico. In CPI's view, that provision—especially when combined with Section 2126(c)'s allusion to "declaratory or injunctive relief against the Oversight Board"—expresses Congress's "clear intent to subject the Board to suit in federal court." Brief for CPI 16. CPI backs up that argument by pointing to provisions insulating the Board (and its members and employees) from monetary liability and barring suits challenging the Board's budgetary decisions. See *id.*, at 15–16, 38–40; see *supra*, at 343–344. Those protections, CPI maintains, would have no point "if the Board were immune generally." Brief for CPI 16. So taken together (says CPI), PROMESA's judicial review provisions are "incompatible with sovereign immunity." *Id.*, at 35.

But all those provisions serve a function without our reading an abrogation of immunity into PROMESA. In Sections 2126(a) and (c), Congress indeed contemplated the possibility of suits—and of relief—against the Board. And wisely so— because litigation against the Board can arise even though the Board enjoys sovereign immunity generally. For one thing, statutes other than PROMESA abrogate the Board's immunity from particular claims. See generally *supra*, at 347–348. Consider Title VII of the Civil Rights Act, prohibiting various kinds of employment discrimination. That law,

this Court has held, validly abrogates the immunity of "governments" and "governmental agencies" from all actions it authorizes. 42 U. S. C. §§ 2000e(a)–(b); see *Fitzpatrick* v. *Bitzer*, 427 U. S. 445, 447–448 (1976). So if a Board employee were fired because of race, Section 2126(a) would tell him where to bring his suit and Section 2126(c) would govern the timing of injunctive and declaratory relief. And for another thing, the Board could decide to waive its immunity from particular suits or claims. Were it to do so, Sections 2126(a) and (c) would again kick in. So PROMESA's judicial review scheme—absent a categorical abrogation of immunity—still has plenty of work to do. For similar reasons, this Court has held that other jurisdictional and judicial review provisions were insufficient to establish an abrogation. See *Blatchford* v. *Native Village of Noatak*, 501 U. S. 775, 786, and n. 4 (1991); *Dellmuth*, 491 U. S., at 231. Here, as there, providing for a judicial forum does not make the requisite clear statement.

Nor do the litigation protections in PROMESA fill the gap. At the most basic level, it would be peculiar to read shields *from* lawsuits as unmistakably subjecting the Board *to* lawsuits (by abrogating immunity). But aside from that, CPI is wrong to think that those shields would be "pointless" or "superfluous" unless PROMESA generally abrogates the Board's immunity. Brief for CPI 38. Consider first Section 2125's protection of the Board, its employees, and its members from monetary liability for carrying out PROMESA. That provision would do work whenever, as discussed above, some other law abrogated or waived the Board's immunity from specific claims. In such a case, the claim could go forward, but Section 2125 would stop the award of money damages. Of particular note, that section would limit the Board's liability in Title III cases, in which PROMESA has indeed abrogated immunity. See *supra*, at 343. And last, Section 2125 protects *individuals*—the Board's members and employees—not covered by the Board's *sovereign* immu-

nity.   All in all, that seems like more than enough to explain the provision's existence.   Similarly for Section 2126(e), which prevents challenges to the Board's fiscal and budgetary decisions.   Yes, sovereign immunity insulates the Board itself from those attacks.   But without Section 2126(e), a plaintiff might get around that immunity via an *Ex parte Young* action—a suit against an individual Board member for injunctive relief.   See *Virginia Office for Protection and Advocacy* v. *Stewart*, 563 U. S. 247, 254–255 (2011) (describing the *Ex parte Young* "limit on the sovereign-immunity principle").   Section 2126(e) precludes that possibility.   So it too has a role to play in a scheme with sovereign immunity.

In short, nothing in PROMESA makes Congress's intent to abrogate the Board's sovereign immunity "unmistakably clear."   *Kimel*, 528 U. S., at 73.   The statute does not explicitly strip the Board of immunity.   It does not expressly authorize the bringing of claims against the Board.   And its judicial review provisions and liability protections are compatible with the Board's generally retaining sovereign immunity.   We therefore reverse the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE THOMAS, dissenting.

At every stage of these proceedings, respondent has argued that petitioner lacks state sovereign immunity.   Petitioner has consistently replied that it has that immunity and that nothing abrogates it.   The courts below, bound by Circuit precedent, held that petitioner does have state sovereign immunity—but they also held that the immunity has been abrogated.   The Court today disagrees with only that latter conclusion, holding that nothing abrogates petitioner's immunity, but it "assume[s] without deciding" the logically antecedent question whether petitioner enjoys that immunity in the first place.   *Ante*, at 346.   In doing so, the majority ef-

fectively decides the outcome of this case. Because I would reach the antecedent question and hold that petitioner lacks the only immunity it has ever asserted, I respectfully dissent.

Respondent, Centro de Periodismo Investigativo, Inc. (CPI), sued petitioner, the Financial Oversight and Management Board for Puerto Rico, over a document-disclosure dispute. The Board moved to dismiss the lawsuit by invoking state sovereign immunity, which the Board claimed to possess as an arm of the Puerto Rican territorial government. CPI responded (both in the District Court and on appeal) that Puerto Rico has no such immunity and that, even if it did, that immunity would be abrogated by the Puerto Rico Oversight, Management, and Economic Stability Act (PROMESA), 48 U. S. C. § 2101 *et seq.* Bound by Circuit precedent holding that Puerto Rico enjoys state sovereign immunity, each court below rejected CPI's first argument. See 35 F. 4th 1, 14 (CA1 2022). But the courts below also agreed with CPI's second argument that the Board's immunity was abrogated.

When the Board asked us to review that holding, CPI once again raised its lead argument, pointing out that we logically could not reverse the First Circuit's judgment without first addressing whether the Board actually has the immunity that the Board claims has not been abrogated. And, in its merits brief, CPI made Puerto Rico's lack of state sovereign immunity its lead argument. There is nothing more that CPI could have done to preserve this antecedent, dispositive argument.

Yet the majority skips it entirely, "assum[ing] without deciding that Puerto Rico is immune from suit in federal district court"—while also deciding that PROMESA does not abrogate that assumed immunity. *Ante*, at 346. In doing so, it effectively consigns CPI's case to the dustbin, remanding back to a Circuit where Circuit precedent will dictate the outcome. CPI might be forgiven for wondering whether we granted certiorari only insofar as our review would favor the Board.

THOMAS, J., dissenting

The majority asserts that it need not address CPI's argument because "[t]he proceedings below did not examine those matters, and we agreed to tackle only the abrogation question." *Ibid.*, n. 2. But it is unclear why the court below would have examined the matter any further, given its precedent.[1] And, "[t]his issue is predicate to an intelligent resolution of the question presented," as it makes no sense to analyze whether PROMESA abrogates state sovereign immunity without first determining whether that immunity is implicated at all. *United States* v. *Grubbs*, 547 U. S. 90, 94, n. 1 (2006) (internal quotation marks omitted).[2] Because I think the Court has a duty to pass upon issues that are fairly presented, preserved by the parties, and necessary to support its judgment, I would consider whether the Board has the immunity it asserts.

From the start, the Board has asserted only that it possesses what it has called "Eleventh Amendment immunity." The First Circuit agreed, explaining that it "has long treated Puerto Rico like a state for Eleventh Amendment purposes." 35 F. 4th, at 14. However, the plain text of the Eleventh Amendment applies only to lawsuits brought against a State by citizens of another State. And, because CPI is a resident of Puerto Rico, I can only assume that the Board and the

---

[1] The fact that the First Circuit barely addressed the issue below, simply noting Circuit precedent, is surely irrelevant; we have often granted certiorari on questions that were resolved below with drive-by citations to binding precedent, sometimes in footnotes. See, *e. g.*, App. to Pet. for Cert. in *Lora* v. *United States*, O. T. 2022, No. 22–49, p. 11a, n. 3; App. to Pet. for Cert. in *Smith* v. *United States*, O. T. 2022, No. 21–1576, p. 15a.

[2] We have often recognized the need to address such logically antecedent questions. See, *e. g.*, *Caterpillar Inc.* v. *Lewis*, 519 U. S. 61, 75, n. 13 (1996); see also *Vance* v. *Terrazas*, 444 U. S. 252, 258–259, n. 5 (1980) (collecting cases). For example, we explained in *Grubbs* that it would "mak[e] little sense to address what the Fourth Amendment requires of anticipatory search warrants if it does not allow them at all." 547 U. S., at 94, n. 1. And, in *Rumsfeld* v. *Forum for Academic and Institutional Rights, Inc.*, 547 U. S. 47 (2006), we explained that "granting certiorari to determine whether a statute is constitutional fairly includes the question of what that statute says." *Id.*, at 56.

First Circuit meant to refer to the sovereign immunity that is inherent in the 50 States. See *Allen* v. *Cooper*, 589 U. S. ——, —— (2020).

As we have explained, inherent state sovereign immunity reflects the original design of the Constitution. See *Franchise Tax Bd. of Cal.* v. *Hyatt*, 587 U. S. ——, —— – —— (2019). At the Founding, the "States considered themselves fully sovereign nations," and part of that sovereignty "was their immunity from private suits." *Id.*, at —— (internal quotation marks omitted). When advocating for the Constitution's ratification, leading Federalists then assured their opponents that the Constitution would not allow private citizens to hale States into federal court without their consent. See *ibid.* Though this Court held otherwise soon thereafter in *Chisholm* v. *Georgia*, 2 Dall. 419 (1793), the Eleventh Amendment's swift ratification confirmed that *Chisholm* was wrong. See *Hyatt*, 587 U. S., at —— – ——. Thus, in general, the Constitution does not allow federal or state courts to hear cases against States without their consent. See *id.*, at —— – ——; *Alden* v. *Maine*, 527 U. S. 706, 730–731 (1999). This deeply rooted rule "inheres in the system of federalism" that the Constitution establishes. See *id.*, at 730.[3]

Here, however, all sides agree that Puerto Rico is a Territory, not a State. See *Puerto Rico* v. *Sánchez Valle*, 579 U. S. 59, 75–77 (2016). Accordingly, it is difficult to see how the same inherent sovereign immunity that the States enjoy in federal court would apply to Puerto Rico. To be sure, the

---

[3] The Court has described this unique form of sovereign immunity as belonging to the 13 original States by dint of their post-Independence and pre-Ratification independent sovereignty and to the subsequently admitted States as a result of their admission to the Union on an equal footing with the original States. *Alden*, 527 U. S., at 713; see also *Michigan* v. *Bay Mills Indian Community*, 572 U. S. 782, 816, n. 1 (2014) (THOMAS, J., dissenting); accord, *Hyatt*, 587 U. S., at —— – —— (noting unique nature of state sovereign immunity).

Thomas, J., dissenting

United States has urged us to hold that Puerto Rico enjoys a form of common-law immunity that, it claims, territorial governments can invoke in federal court. See Brief for United States as *Amicus Curiae* 16–19. But the Board has, at every stage, argued only that it possesses the same immunity as States. That argument appears untenable. And, as the party asserting an immunity, the Board should have the burden of establishing its immunity. Because the Board has failed to do so, I would rule in CPI's favor and affirm the judgment below.

I respectfully dissent.

Page Proof Pending Publication

Reporter's Note

The attached opinion has been revised to reflect the usual publication and citation style of the United States Reports. The revised pagination makes available the official United States Reports citation in advance of publication. The syllabus has been prepared by the Reporter of Decisions for the convenience of the reader and constitutes no part of the opinion of the Court. A list of counsel who argued or filed briefs in this case, and who were members of the bar of this Court at the time this case was argued, has been inserted following the syllabus. Other revisions may include adjustments to formatting, captions, citation form, and any errant punctuation. The following additional edits were made:

p. 353, line 2, "these" is replaced with "those"