# United States Court of Appeals
## For the First Circuit

No. 24-1286

MIYA WATER PROJECTS NETHERLANDS B.V.,

Plaintiff, Appellant,

v.

FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Pedro A. Delgado Hernández, U.S. District Judge]

Before

Rikelman, Howard, and Aframe,
Circuit Judges.

Benedict S. Bernstein, with whom Ricardo F. Casellas, Diana Pérez Seda, Carla S. Loubriel, Casellas Alcover & Burgos P.S.C., Tara M. Lee, Scott E. Lerner, and White & Case LLP were on brief, for appellant.

Mark D. Harris, with whom Timothy W. Mungovan, John E. Roberts, Laura E. Stafford, Adam L. Deming, Guy Brenner, Martin J. Bienenstock, and Proskauer Rose LLP were on brief, for appellee.

May 19, 2025

**RIKELMAN, Circuit Judge**. The Transparency and Expedited Procedure for Public Records Access Act (TEPPRA) creates a right to sue the Commonwealth of Puerto Rico to access public records and documents. See P.R. Laws Ann. tit. 3, § 9913(1) (2019). Appellant Miya Water Projects brought a claim under TEPPRA against the Financial Oversight and Management Board for Puerto Rico ("the Board"). The Board is an entity that was established by Congress in 2016. See 48 U.S.C. § 2121. Even though Congress formed it, the Board sits "within the territorial government" of the Commonwealth. Id. § 2121(c).

After Miya sued the Board in federal court under TEPPRA, the district court dismissed the case, holding that Eleventh Amendment immunity shielded the Board from suit. On appeal, Miya argues that the district court applied the wrong legal framework in concluding that Puerto Rico's Eleventh Amendment immunity extends to the Board. Miya also contends that, to the extent the Board shares Puerto Rico's Eleventh Amendment immunity, the Commonwealth waived that immunity through TEPPRA. We agree with the district court that Puerto Rico's Eleventh Amendment immunity extends to the Board and that the Commonwealth did not waive that immunity through TEPPRA. Thus, we affirm.

## I. BACKGROUND

In 2016, Congress enacted the Puerto Rico Oversight, Management, and Economic Stability Act (PROMESA), 48 U.S.C.

- 2 -

§§ 2101-2241, to address the financial crisis in Puerto Rico. See Assured Guar. Corp. v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 872 F.3d 57, 59 (1st Cir. 2017). Through PROMESA, Congress established the Board and charged it with "achiev[ing] fiscal responsibility and access to the capital markets" in Puerto Rico. See 48 U.S.C. § 2121(a). PROMESA contains a "jurisdiction" provision, which requires any lawsuits against the Board to be brought in federal court. See id. § 2126(a).

Three years later, in 2019, the Commonwealth enacted TEPPRA. P.R. Laws Ann. tit. 3, §§ 9911-9923. TEPPRA codified a right to access public records and documents from the Puerto Rico government. See id. § 9913(1). The statute advances this policy in several ways, including by requiring government entities to designate Public Records Officers and by giving any person the right to file a public records request. Id. §§ 9915-16. If the government denies a person's records request, the statute empowers that person "to file, pro se or by counsel, a Special Petition for Public Records Disclosure Order with the Court of First Instance of the Judicial Region of his residence." Id. § 9919.

In May 2022, Miya invoked TEPPRA to seek records from the Board about its cancellation of a water infrastructure project on which Miya had bid. The Board asserted that TEPPRA did not apply to it and declined to produce any documents.

- 3 -

Miya then sued the Board in the United States District Court for the District of Puerto Rico, relying on both TEPPRA's cause of action and PROMESA's jurisdictional provision.  It brought a single claim, alleging that the Board violated TEPPRA by refusing to release the records and requesting that the court order it to do so.  The Board moved to dismiss the lawsuit, arguing that Eleventh Amendment immunity shielded it from suit.

The district court agreed that the Board was protected by Eleventh Amendment immunity and granted the Board's motion to dismiss.[1]  See Miya Water Projects Neth. B.V. v. Fin. Oversight & Mgmt. Bd. for P.R., No. 22-CV-1358, 2023 WL 10554818, at *2-8 (D.P.R. Dec. 12, 2023), report and recommendation adopted in part, 2024 WL 1344112 (D.P.R. Feb. 13, 2024).  First, citing our binding precedent, the court explained that Puerto Rico has Eleventh Amendment immunity even though it is a territory rather than a state.  See id. at *2-3.  Second, it concluded that the Board shares Puerto Rico's immunity as an "arm of the state."  See id. at *3-5.  The arm-of-the-state test asks

> whether the state has indicated an intention -- either explicitly by statute or implicitly through the structure of the entity -- that the entity share the state's sovereign immunity.  If no explicit indication exists, the court must consider the structural indicators of the state's intention.  If these

[1] We refer to the magistrate judge and the district court judge together as "the district court."

- 4 -

> point in different directions, the court must proceed to the second stage and consider whether the state's treasury would be at risk in the event of an adverse judgment.

Irizarry-Mora v. Univ. of P.R., 647 F.3d 9, 12 (1st Cir. 2011) (quoting Redondo Constr. Corp. v. P.R. Highway & Transp. Auth., 357 F.3d 124, 126 (1st Cir. 2004)).  The district court reasoned that Puerto Rico's "intention" as to the Board's sovereign immunity was unclear, given that Congress -- not the Commonwealth -- created the Board.  Miya Water Projects, 2023 WL 10554818, at *3.  But it observed that under our precedent, when there is ambiguity about whether an entity is an arm of the state, "the primary focus is on the risk to the state treasury." Id. at *5 (quoting Irizarry-Mora, 647 F.3d at 13).  And it highlighted that, when it comes to the Board, "[t]he Commonwealth entirely funds the Board's operations" and pays judgments against the Board.  Id.; see also 48 U.S.C. § 2127(b).  Because "the impetus for the Eleventh Amendment [was] the prevention of federal-court judgments that must be paid out of a State's treasury," the court concluded that the Board must be treated as an arm of Puerto Rico.  Miya Water Projects, 2023 WL 10554818, at *5 (alteration in original) (quoting Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 48 (1994)).

The district court also held that the Commonwealth did not waive the Board's Eleventh Amendment immunity through TEPPRA. See id. at *6-8.  It concluded that TEPPRA failed to meet the

strict standards required to effect such a waiver under federal law. See id. As a result, the court determined that it lacked subject matter jurisdiction to decide Miya's case and dismissed the complaint. See id. at *8; Miya Water Projects, 2024 WL 1344112, at *1.

Miya appeals.

## II. DISCUSSION

We review de novo a district court's grant or denial of a motion to dismiss based on Eleventh Amendment immunity. See Cotto v. Campbell, 126 F.4th 761, 767 (1st Cir. 2025).

Miya argues that the district court had subject matter jurisdiction over this case and thus erred in granting the Board's motion to dismiss. The district court held, however, that it lacked jurisdiction because Puerto Rico's Eleventh Amendment immunity extends to the Board and Puerto Rico did not waive that immunity through TEPPRA. See Miya Water Projects, 2023 WL 10554818, at *2-8.

We agree with the district court. The Eleventh Amendment to the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. It has been interpreted to "bar[] a state from being sued in federal court by

its own citizens, citizens of another state, or citizens of a foreign nation." Cotto, 126 F.4th at 767 (citing Hans v. Louisiana, 134 U.S. 1, 10, 15 (1890)). Binding precedent and Miya's own concessions settle most of the legal principles that resolve this appeal: Puerto Rico enjoys Eleventh Amendment immunity, the Board is an "arm" of Puerto Rico, and Congress did not abrogate the Board's Eleventh Amendment immunity through PROMESA.[2]

Indeed, by our assessment, the parties dispute only two issues. First, they disagree on whether a legal framework other than the arm-of-the-state test should determine whether Puerto Rico's Eleventh Amendment immunity extends to the Board. Second, they dispute whether Puerto Rico has waived the Board's Eleventh Amendment immunity against suit in federal court through TEPPRA. We reject Miya's arguments on both fronts.

As to the correct legal framework for determining the Board's status, Miya offers no compelling reason why the arm-of-the-state test is inapt. As to waiver, Miya's arguments about TEPPRA's text, purpose, and legislative history fail to clear

---

[2] The Board argued below that TEPPRA does not apply to it, but it does not make this argument on appeal. Because the question of whether TEPPRA applies to the Board is not presented here, we assume without deciding that TEPPRA applies to the Board.

the high bar required by Supreme Court precedent to demonstrate a state's waiver of its Eleventh Amendment immunity.

## A. Eleventh Amendment Immunity and the Arm-of-the-State Test

We have repeatedly held, and the parties do not dispute, that the Eleventh Amendment applies to Puerto Rico, and that Puerto Rico therefore enjoys Eleventh Amendment immunity. See, e.g., Toledo v. Sánchez, 454 F.3d 24, 31 n.1 (1st Cir. 2006) (collecting cases); Borrás-Borrero v. Corporación del Fondo del Seguro del Estado, 958 F.3d 26, 33 (1st Cir. 2020) (explaining that "Puerto Rico is treated as a state for Eleventh Amendment purposes" (quoting Fresenius Med. Care Cardiovascular Res., Inc. v. P.R. & Caribbean Cardiovascular Ctr. Corp., 322 F.3d 56, 61 (1st Cir. 2003))). Miya argues, however, that Puerto Rico's Eleventh Amendment immunity does not extend to the Board.[3] We determine whether an entity shares a state's Eleventh Amendment immunity by asking whether that entity is an "arm of the state." See Pastrana-Torres v. Corporación de P.R. para la Difusión Pública, 460 F.3d 124, 126-27 (1st Cir. 2006).

Here, Miya concedes that the Board is an arm of Puerto Rico. Under our binding precedent, we need go no further. To be

---

[3] In a previous case, we assumed, without deciding, that the Commonwealth's Eleventh Amendment immunity extends to the Board. See Centro de Periodismo Investigativo, Inc. v. Fin. Oversight & Mgmt. Bd. for P.R., 35 F.4th 1, 15 (1st Cir. 2022), rev'd and remanded, 598 U.S. 339 (2023).

sure, as Miya points out, the Board was created by Congress pursuant to its powers under the Territory Clause and "is a creature of federal statute" (Miya's words), unlike the typical arm of a state. See 48 U.S.C. § 2121. But the Territory Clause is also the basis for the United States' authority over Puerto Rico. See Commonwealth of Puerto Rico v. Sanchez Valle, 579 U.S. 59, 77 (2016). So, accepting Miya's reasoning that the Board lacks Eleventh Amendment immunity because Congress relied on the Territory Clause to demarcate the Board's powers could lead to the conclusion that the Commonwealth would also lack Eleventh Amendment immunity -- a conclusion that, as explained above, our precedent forecloses and Miya does not press.[4]

Thus, based on Miya's concession and our precedent, we conclude that the Board enjoys Eleventh Amendment immunity as an arm of the Commonwealth.

## B. Waiver of Eleventh Amendment Immunity

We turn next to whether the Commonwealth has waived the Board's Eleventh Amendment immunity through TEPPRA. A state (or

---

[4] We also note that Congress expressly designated the Board "an entity within the territorial government" of Puerto Rico. 48 U.S.C. § 2121(c). And as the Supreme Court has recognized, "Congress did not simply state that the Board is part of the local Puerto Ric[o] government. Rather, Congress also gave the Board a structure, a set of duties, and related powers all of which are consistent with this statement." Fin. Oversight & Mgmt. Bd. for P.R. v. Aurelius Inv., LLC, 590 U.S. 448, 465 (2020).

its arm) may be sued in federal court in two circumstances: when Congress has abrogated the state's Eleventh Amendment immunity or when the state itself has waived its immunity against suit in federal court. See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999). Here, the parties agree that Congress did not abrogate the Board's Eleventh Amendment immunity through PROMESA. Although Congress provided in PROMESA that actions against the Board "shall be brought" in federal court, 48 U.S.C. § 2126, the Supreme Court has held that this language does not meet the "high bar" for establishing that Congress intended to eliminate the Board's Eleventh Amendment immunity. Fin. Oversight & Mgmt. Bd. for P.R. v. Centro de Periodismo Investigativo, Inc., 598 U.S. 339, 342 (2023) [hereinafter CPI]. Instead, the Court concluded, PROMESA's jurisdictional provision simply means that where some other statute abrogates or waives the Board's immunity, a party can sue the Board only in federal court. See id. at 349-50. Thus, we focus our inquiry on whether the Commonwealth has waived the Board's Eleventh Amendment immunity against suit through TEPPRA.

A state's waiver of its Eleventh Amendment immunity must be crystal clear. See Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 305-06 (1990); Edelman v. Jordan, 415 U.S. 651, 673 (1974); Acevedo López v. Police Dep't of P.R., 247 F.3d 26, 28 (1st Cir. 2001). In evaluating a state statute like TEPPRA, a

- 10 -

court can find a "waiver of Eleventh Amendment immunity 'only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction.'" Feeney, 495 U.S. at 305-06 (cleaned up) (quoting Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 239-40 (1985)); see also Acevedo López, 247 F.3d at 28.

Miya argues that TEPPRA contains an express waiver, but we see none. Miya begins by pointing us to TEPPRA's cause-of-action provision. See P.R. Laws Ann. tit. 3, § 9919. But this provision merely confers a right to enforce TEPPRA in "the Court of First Instance," id., which is a Commonwealth court. Similarly, TEPPRA contains several other references to procedures available only in the Commonwealth courts. See id. For example, it explains that affected persons "shall be entitled to file . . . a [petition] with the Court of First Instance of the Judicial Region of his residence." Id. It requires "the Judicial Branch [to] create and have available to the public a simple fillable form in order to file such petition." Id. And it orders "the Clerk of the Court of First Instance with which the petition was filed [to] give notice" to the implicated government entity. Id.

It is well established, however, that "[a] State does not waive its Eleventh Amendment immunity by consenting to suit

- 11 -

only in its own courts." Feeney, 495 U.S. at 306.[5] Indeed, Miya acknowledges that a state's waiver of sovereign immunity in its own courts does not waive Eleventh Amendment immunity in federal court. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99 n.9 (1984).

Miya nevertheless argues that this "principle[] of federalism" does not apply to the Board because Congress created the Board pursuant to its powers under the Territory Clause. Miya's argument is foreclosed by our prior decisions. First, we have already applied this "principle of federalism" to the Commonwealth. See Diaz-Fonseca v. Puerto Rico, 451 F.3d 13, 33 (1st Cir. 2006) ("[T]he Commonwealth's 'waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts.'" (quoting Pennhurst, 465 U.S. at 99 n.9)). And second, as explained above, we treat the Board as an arm of the Commonwealth. Again, we recognize that

---

[5] At oral argument, Miya represented that "the Supreme Court has, on many occasions, and these are cited in our briefs, disregarded the fact that there were procedures unique to Commonwealth court when finding that the statute waived immunity in federal court." Miya's brief does not cite such a case, nor can we find one. The Supreme Court decision that Miya does rely on for the proposition that "procedures uniquely available in state court d[o] not alter availability of federal jurisdiction for suit" is not an Eleventh Amendment case and is inapposite. See Comm'rs of Rd. Improvement Dist. No. 2 v. St. Louis Sw. Ry. Co., 257 U.S. 547, 553-54 (1922) (discussing state procedure in the context of federal removal statute).

the Board has unique features for an "arm of the state." It was created by Congress, not by the Commonwealth, see 48 U.S.C. § 2121; the President of the United States appoints and removes the Board's members, see id. § 2121(e)(1)-(2), (e)(5)(B); and the Board may veto decisions of Puerto Rico's governor and legislature, see id. §§ 2141-42. Nevertheless, "the Board's structure, duties, and powers make it 'part of the local Puerto Ric[o] government.'" CPI, 598 U.S. at 342 (quoting Fin. Oversight & Mgmt. Bd. for P.R. v. Aurelius Inv., LLC, 590 U.S. 448, 465 (2020)). As part of Puerto Rico's government, it shares in Puerto Rico's sovereign immunity. Thus, the Commonwealth did not waive the Board's Eleventh Amendment immunity in federal court by purporting to waive its immunity in Commonwealth courts.

Miya also suggests that we should read TEPPRA as waiving by implication the Board's Eleventh Amendment immunity. In making this argument, Miya cites to the "applicability" section of TEPPRA. That section provides that "[t]he provisions of this chapter shall apply to the Government of Puerto Rico, that is, the Legislative, the Judicial, and the Executive Branches, as well as all government entities, public corporations, and municipalities." P.R. Laws Ann. tit. 3, § 9912 (emphasis added). Because the Board can be sued only in federal court under PROMESA, Miya contends, we must imply a waiver of the Board's Eleventh Amendment immunity to effectuate this language. Otherwise, Miya explains, it would be

- 13 -

impossible to bring a TEPPRA claim against the Board in any court, and TEPPRA would not apply to "all" Commonwealth government entities. Similarly, Miya argues that immunizing the Board from TEPPRA enforcement would "subvert the Commonwealth's intention expressed in numerous provisions emphasizing the universality of both TEPPRA's reach and the rights it establishes." See, e.g., id. § 9913(1) ("The public records and documents generated by the government are presumed to be public and equally accessible to everyone."); id. § 9913(5) ("The right to access public records is a constitutional pillar and a fundamental human right."); id. § 9916 ("Any person may file a public records request . . . without the need to show proof of a private or legal interest."); id. § 9922 ("In the event of a conflict between the provisions of this chapter and any other law, the provisions that are most favorable to the person requesting public records or documents shall prevail.").

Supreme Court precedent is clear, however, that Miya cannot rely on such general language to imply a waiver of Eleventh Amendment immunity. Instead, a court may imply a waiver only when there is such "overwhelming implication" from a statute's text that it "leave[s] no room for any other reasonable construction." Feeney, 495 U.S. at 305 (quoting Atascadero, 473 U.S. at 240). There is no such overwhelming implication of waiver in TEPPRA's text.

- 14 -

Indeed, the Supreme Court's reasoning in Feeney requires us to reject Miya's argument. The consent-to-suit statute at issue in that case provided that New York and New Jersey "consent[ed] to suits, actions, or proceedings of any form or nature at law, in equity or otherwise." Id. at 306. The Court explained that such "general consent to suit provisions, standing alone," are "insufficient to waive [the states'] Eleventh Amendment immunity." Id. Absent an express reference to federal court, the Court reiterated, these "expansive terms" would not confer federal jurisdiction. Id. at 303, 306-07. Similarly, TEPPRA's broad declaration that "[t]he provisions of [TEPPRA] shall apply to the Government of Puerto Rico . . . as well as all government entities," P.R. Laws Ann. tit. 3, § 9912, does not meet the "particularly strict" test for waiver because it does not mention federal court. Feeney, 495 U.S. at 305; see also Maysonet-Robles v. Cabrero, 323 F.3d 43, 50-51 (1st Cir. 2003) (holding that statute did not waive immunity where it did not reference federal court); Atascadero, 473 U.S. at 241 (holding that consent to suit provision did not waive immunity because it did "not specifically indicate the State's willingness to be sued in federal court").

Unable to point to any overwhelming implication of waiver in TEPPRA's text, Miya shifts to suggesting that we should imply such a waiver based on the statute's legislative history and purpose. As we explained above, however, a state's intent to waive

- 15 -

its Eleventh Amendment immunity must be gleaned "from the text" of the statute, not from legislative history.  Feeney, 495 U.S. at 305 (quoting Atascadero, 473 U.S. at 240).

And even if we were to consider Miya's legislative history and purpose arguments, they do not support its position. Miya argues that "[i]n consenting to suit against the Board, the Commonwealth was aware of the provisions of PROMESA."  Because the Commonwealth legislature knew that PROMESA channeled claims against the Board to federal court, Miya contends, it would have been redundant for the legislature to waive the Board's immunity from suit in federal court.  We do not agree.  Statutory text indicating a waiver of the Board's Eleventh Amendment immunity in federal court would not have been redundant with PROMESA because, as the Supreme Court held in CPI and as Miya acknowledges, PROMESA did not abrogate the Board's Eleventh Amendment immunity in federal court.  See 598 U.S. at 351.  Further, as Miya admits, the legislature knew suits against the Board could not be brought in Commonwealth courts because of PROMESA.  Yet it limited TEPPRA's cause of action provision to Commonwealth courts and did not reference federal court.  Thus, Miya has not convinced us that the only "reasonable construction" of the statute, Feeney, 495 U.S. at 305-06 (quoting Atascadero, 473 U.S. at 240), is that the Commonwealth intended to waive the Board's Eleventh Amendment immunity through TEPPRA.

We acknowledge that the interaction of TEPPRA, PROMESA, and the Eleventh Amendment may leave Miya with no forum in which to enforce TEPPRA against the Board -- assuming TEPPRA applies to the Board in the first place. But because Miya has failed to demonstrate a clear waiver of the Board's Eleventh Amendment immunity against suit in federal court, the district court's ruling was correct.

### III. CONCLUSION

For all these reasons, we **<u>affirm</u>** the district court's order dismissing Miya's claim for lack of subject matter jurisdiction.